[No. S085852. June 25, 2001.]

SHAWN GARFIELD PRICE, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

David Joseph Macher for Petitioner.

No appearance for Respondent.

Grover Trask, District Attorney, and Elaina Gambera Bentley, Deputy District Attorney, for Real Party in Interest.

**OPINION**

**BAXTER, J.**—Penal Code section 784.7[1] permits the trial of more than one of several offenses enumerated therein in any county in which one such offense occurred if the defendant and victim are the same in all of the charged offenses. It thus creates a venue for trial of some offenses in a county other than that in which those offenses occurred. As a result the jury will not be selected from residents of that county.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to be tried "by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." Article I, section 16 of the California Constitution (hereafter article I, section 16) has been construed as implicitly reserving a similar, but not necessarily coextensive, vicinage right.

The Court of Appeal rejected petitioner's argument that section 784.7 is invalid because it denies defendants the right to trial by a jury drawn from residents of the area in which the charged offense allegedly was committed. We granted review to consider whether trial in a venue authorized by section 784.7 violates either the vicinage clause of the Sixth Amendment or article I, section 16. We conclude it does not, reject other claims made by petitioner, and affirm the judgment of the Court of Appeal.

## I

### Background

Petitioner Shawn Garfield Price is charged in a fourth amended felony complaint filed on July 20, 1999, in the Riverside County Superior Court

---

[1] All statutory references are to the Penal Code unless otherwise stated.

with: count 1—the April 1, 1998, murder (§ 187) of his son Sterling Price in Riverside County; count 2—child endangerment (§ 273a, subd. (a)) involving Sterling on April 1, 1998, in Riverside County; count 3—torture (§ 206) of his daughter Brooke on April 1, 1998, in Riverside County; count 4—child endangerment involving Brooke from December 1, 1996 through April 1, 1998, in Riverside County; and count 5—child endangerment involving Brooke on April 20, 1995, in Santa Clara County. Petitioner's wife, Julia Ellen Price, is a named defendant in counts 2, 3, and 4. Infliction of great bodily harm (§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)) is charged in connection with counts 4 and 5. Sterling and Brooke were ages two and three years, respectively, on April 1, 1998.

The Santa Clara County offense (count 5 above) was originally charged in a felony complaint filed on April 15, 1998, in the Municipal Court of the Santa Clara County Judicial District. Thereafter, a felony complaint filed in the Riverside County Superior Court on March 1, 1999, charged petitioner with the four Riverside County offenses. On March 5, 1999, the Riverside County prosecutor moved to consolidate the Santa Clara County case with the Riverside County prosecution pursuant to section 784.7. Petitioner opposed the consolidation on the ground that it violated his right to trial in the vicinage as guaranteed by the Sixth Amendment and corresponding implied right under article I, section 16. On March 23, 1999, the court ordered the transfer and consolidation of the Santa Clara County case with the Riverside County case. A third amended felony complaint was filed on the same day charging petitioner with the Santa Clara County offense as well as the original Riverside County charges. Petitioner then sought relief by petition for writ of mandate/prohibition, the Court of Appeal issued an order to show cause, and, after briefing and argument,[2] discharged the order to show cause and denied the petition.[3]

The Court of Appeal first rejected petitioner's claims that the consolidation procedure violated section 954, which permits joinder of offenses in specified circumstances; that the procedure would deprive petitioner of a fair trial; that venue was not proper in Riverside County; and that application of

---

[2]Real party in interest, the People, elected to have the "Response to Petition for Writ of Prohibition/Mandate," filed May 28, 1999, together with a July 22, 1999, addendum and supplemental points and authorities, treated as the return to the order to show cause.

Both petitioner and the People ask that the court take judicial notice of the records and files of the Riverside County and Santa Clara County files now consolidated as Riverside County case No. RIF080161, and a May 6, 1998 opinion of the Legislative Counsel related to Assembly Bill No. 2734 (1997-1998 Reg. Sess.). The request is granted.

[3]The fourth amended complaint under which petitioner is now charged was filed to remove Julia Ellen Price as a named defendant in count 5 to which her name had been erroneously added and to correct an erroneous allegation that count 5 occurred in Riverside County. All proceedings in the superior court, including the preliminary hearing, have been stayed.

section 784.7 was an impermissible ex post facto application of that section. The Court of Appeal then addressed and rejected petitioner's vicinage argument. The court reasoned that in section 784.7 the Legislature had created a flexible multicounty district for trial of the enumerated offenses by expanding the venue for trial to include a county in which a related offense was committed. That district did not offend the federal or state constitutional guarantees of trial in the vicinage in which the offense is committed. The court relied in part for that conclusion on *People v. Martin* (1995) 38 Cal.App.4th 883, 888 [45 Cal.Rptr.2d 502], where the court had held that the counties in which venue lies under the venue statutes comprise a district for vicinage purposes, and *Hernandez v. Municipal Court* (1989) 49 Cal.3d 713 [263 Cal.Rptr. 513, 781 P.2d 547] (*Hernandez*), in which this court suggested that a narrow interpretation of the vicinage requirement is no longer warranted.

The Court of Appeal reasoned that the contemporary right to trial by jury no longer contemplates jurors who are familiar with the parties and the locality and therefore are able to supply their own personal knowledge in evaluating the evidence. That common law concept has been replaced with a right to trial by jurors who do not have independent knowledge of those factors. In *People v. Richardson* (1934) 138 Cal.App. 404, 407 [32 P.2d 433] (*Richardson*), the court held that the right to a jury of the vicinage was satisfied by a jury drawn from the county in which the trial is authorized by law to be held. *People v. Powell* (1891) 87 Cal. 348, 354-360 [25 P. 481] (*Powell*), which interpreted vicinage as the county in which the offense occurred, had been criticized, and this court's decision in *People v. Prather* (1901) 134 Cal. 386, 389-390 [66 P. 483] upholding trial of theft-related offenses in either the county in which the theft occurred or that to which the property was taken, cast doubt on *Powell*.

The Court of Appeal here recognized that, unlike the cases in which venue is proper in any county in which an act related to the charged offense occurs, section 784.7 requires only that the victim and defendant in a spousal or child abuse charge arising in a different county be the same as those named in a charge pending in the county where trial is to be held. Nonetheless, this relationship was sufficient to satisfy the venue requirement of article I, section 16.[4] Given the cost of multiple trials, the state had a significant interest in allowing joinder for trial of charges related in this way, whereas

---

[4]The reasoning of the Court of Appeal closely tracks that of an opinion on the constitutionality of Assembly Bill No. 2734 (1997-1998 Reg. Sess.) provided to its author, Assemblyman Pacheco, by the Legislative Counsel's Office (Assembly Bill 2734) on May 6, 1998.

the importance of trial by members of the community in which an offense occurs was rapidly diminishing.[5]

Petitioner now repeats his contentions that section 784.7 violates state and federal vicinage rights; violates venue requirements by permitting a case with no factual nexus to Riverside County to be tried there; and does not permit consolidation of the Santa Clara County offenses with offenses committed in Riverside County against a separate victim (Sterling).

## II

### Discussion

Section 784.7, enacted in 1998 (Stats. 1998, ch. 302, § 1), provides: "When more than one violation of Section 261 [rape], 262 [spousal rape], 264.1 [rape or genital penetration in concert], 273a [child endangerment], 273.5 [infliction of corporal injury], 286 [sodomy], 288 [lewd or lascivious conduct with child under 14], 288a [oral copulation], 288.5 [continual sexual abuse of child], 289 [forcible sexual penetration], or 646.9 [stalking] occurs in more than one jurisdictional territory, and the defendant and the victim are the same for all of the offenses, the jurisdiction of any of those offenses is in any jurisdiction where at least one of the offenses occurred."

### A. Consolidation with Nonenumerated Offenses.

We first address petitioner's claim that section 784.7 permits consolidation of an out-of-county offense only with offenses enumerated in section 784.7. If so, consolidation for trial of the Santa Clara County child endangerment charge (count 5) with the Riverside County murder (count 1) and torture (count 3) charges is not permitted even though a second child endangerment charge involving the same defendant and victim as that charged in Santa Clara County is included in the Riverside County complaint.

Nothing in the language of section 784.7 limits the grant of jurisdiction to try enumerated offenses together in any county in which one offense occurred to those cases in which only *enumerated* offenses are charged in the county in which the trial is to take place. The consolidation of the Santa Clara County charge with the Riverside County charges is authorized under the plain language of section 784.7.

---

[5]The Court of Appeal did not, as petitioner asserts, hold that the Sixth Amendment vicinage right is only a right to trial within North America. It simply noted that "it has been commented that for the colonists, the only crucial function of a vicinage requirement was that it secure the right to trial in North America. (See Blume, *The Place of Trial in Criminal Cases: Constitutional Vicinage and Venue* (1944) 43 Mich. L.Rev. 59, 64.)"

Petitioner argues that we should not construe section 784.7 that broadly, but when the language of a statute is clear, no judicial construction is necessary or permitted. (Code Civ. Proc., § 1858; *Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].)

Moreover, when enacting section 784.7 the Legislature is presumed to have been aware that joinder and consolidation of related offenses in a single complaint or information is expressly authorized by section 954. That section provides in pertinent part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. . . ." Were we to accept petitioner's restricted view of section 784.7, we would have to conclude that the Legislature intended a pro tanto repeal of section 954, a conclusion a court will not reach with regard to any statute unless a newly enacted statute is irreconcilable with an earlier statute applicable to the same subject matter. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 568-569 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; *People v. Hazelton* (1996) 14 Cal.4th 101, 122 [58 Cal.Rptr.2d 443, 926 P.2d 423].)

We agree with the Court of Appeal, therefore, that the consolidation of the Santa Clara County charge with those pending in Riverside County is authorized by section 784.7.

B. *Venue.*

██ As *People v. Guzman* (1988) 45 Cal.3d 915, 934 [248 Cal.Rptr. 467, 755 P.2d 917] explains: "[V]enue and vicinage are logically distinct concepts. Venue refers to the location where the trial is held, whereas vicinage refers to the area from which the jury pool is drawn. (Kershen, *Vicinage* (1976) 29 Okla.L.Rev. 801, 805.) It is possible in theory to change one but not the other. (See, e.g., *State of Maryland v. Brown* (D.Md. 1969) 295 F.Supp. 63, 79, 82.)"

The concepts of venue and vicinage are closely related, as a jury pool ordinarily is selected from the area in which the trial is to be held. The concepts have different origins and purposes, however. Venue is historically significant from a national perspective because, as discussed below, the pre-Revolutionary practice of transporting colonists who were charged with crimes in the colonies to either England or other English colonies for trial

was among the principal complaints of the colonists against England. Objections to that practice led to the inclusion of article III, section 2 in the United States Constitution. That provision limits the place of trial in federal criminal proceedings to the state in which the crime was committed. Most California venue statutes serve a similar purpose in reducing the potential burden on a defendant who might otherwise be required to stand trial in a distant location that is not reasonably related to the alleged criminal conduct.

Relying on *People v. Sering* (1991) 232 Cal.App.3d 677, 687-691 [283 Cal.Rptr. 507] (*Sering*), petitioner contends that trial of the Santa Clara County charge in Riverside County violates the venue rule, as the charge will be tried in a county remote from the scene of the crime. This claim lacks merit. ■ The general rule of territorial jurisdiction over felonies is that stated in section 777: "except as otherwise provided by law the jurisdiction of every public offense is in any competent court within the jurisdictional territory of which it is committed." Ordinarily the jurisdictional territory of a superior court is the county in which it sits. (§ 691, subd. (b).) Venue or territorial jurisdiction establishes the proper place for trial, but is not an aspect of the fundamental subject matter jurisdiction of the court and does not affect the power of a court to try a case. (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 120-121 [101 Cal.Rptr. 745, 496 P.2d 817]; *Newman v. County of Sonoma* (1961) 56 Cal.2d 625, 627 [15 Cal.Rptr. 914, 364 P.2d 850].)

When the Legislature creates an exception to the rule of section 777, the venue statute is remedial and for that reason is construed liberally to achieve the legislative purpose of expanding criminal jurisdiction. (*People v. Bismillah* (1989) 208 Cal.App.3d 80, 85 [256 Cal.Rptr. 25].) Section 784.7 is such an exception and the legislative purpose is clear.

■ Section 784.7 was enacted to protect repeat victims of child abuse or molestation and victims of domestic violence, offenses that are often inflicted on the same victim by the same perpetrator, from the need to make multiple court appearances to testify against the perpetrator and to reduce costs of separate trials. A Senate floor analysis by the Senate Rules Committee regarding the measure, which originated as Assembly Bill 2734, offered the author's statement of the purpose of the bill:

"[Assembly Bill] 2734 seeks to provide for the ability to combine trials when the victim and the defendant are the same for all the offenses. In crimes of domestic violence and child abuse or molestation, there is a high degree of mobility. The first offense may happen in one county, and then the victim moves to another county. The defendant follows them and commits

the same crime again. Because of the repeat offenses, the victim is faced with the possibility of multiple trials.

"[Assembly Bill] 2734 would allow the trials to be combined when the defendant, victim and crime are the same. This will save the victim from testifying in the multiple trials over several years. Additionally, this will provide a cost savings to the trial court system by reducing the number of trials." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 2734, as amended June 15, 1998.)

Notwithstanding the general preference for local venue recognized by the court in *Sering, supra*, 232 Cal.App.2d 677, 687, because venue for trial implicates legislative policy, not constitutional imperative, the Legislature may determine the venue for trial except to the extent the vicinage or due process provisions of the state or federal Constitution circumscribe that authority. (*People v. Zegras* (1946) 29 Cal.2d 67, 68 [172 P.2d 883]; *Van Zanten v. Superior Court* (1963) 214 Cal.App.2d 510, 513 [29 Cal.Rptr. 625].) The Legislature has made section 784.7 an exception to the general venue statute, and has thereby authorized the prosecution to elect Riverside County as an alternative venue for trial of the Santa Clara County charge. Insofar as a designation of the venue for trial of a criminal charge does not violate any constitutional provision, the decision is one to be made by the Legislature.

### C. *Vicinage.*

Petitioner argues that the vicinage provision of the Sixth Amendment is applicable to the states through the Fourteenth Amendment. He contends that the vicinage clause of the Sixth Amendment right to jury trial entitles him to trial on count 5 by jurors drawn from the district in which the offense was committed, i.e., Santa Clara County, and that, in any event, the district from which jurors are drawn must have been determined before commission of the charged offense, making application of section 784.7 to him constitutionally impermissible. He also claims the vicinage right implied in article I, section 16 gives him a right to be tried on count 5 in and before a jury selected from residents of Santa Clara County, the location in which the offense now charged in count 5 allegedly was committed.

Petitioner's vicinage claim recognizes that, with a single exception,[6] trial court jurors may be summoned for service only by courts of, and for service

---

[6]Section 1036.7 permits selection of a jury in a county to which trial might have been moved on a change of venue, and moving that jury to the county in which the criminal charges are pending.

in, the county of their residence. (Code Civ. Proc., § 203, subd. (a)(4).) No exception is made for trial of charges consolidated pursuant to Penal Code section 784.7. Therefore, should petitioner be tried in Riverside County on the Santa Clara County charge, no prospective jurors who are residents of Santa Clara County will be summoned. This, he claims, violates his Sixth Amendment right to trial before a jury of the vicinage and the corresponding right found in article I, section 16.

1. *Venue and vicinage under the Sixth Amendment.*

The People argue that the vicinage clause of the Sixth Amendment was not incorporated and made applicable to the states through the Fourteenth Amendment and that, in any case, section 784.7 does not violate the Sixth Amendment. Because the Sixth Amendment requirement that the district from which a jury is selected for trial of a criminal charge must have been "previously determined by law" would seem to be dispositive in this case, we address the Sixth Amendment questions first.

At the time of its adoption, the Bill of Rights, of which the Sixth Amendment is a part, applied only to the federal government (*Barron v. Baltimore* (1833) 32 U.S. 243, 249-251 [8 L.Ed. 672, 674-675]) and thus only to trials in the courts of the United States. Since that time the right to jury trial afforded criminal defendants by the Sixth Amendment has been held applicable to the states by incorporation through the due process clause of the Fourteenth Amendment. (*Williams v. Florida* (1970) 399 U.S. 78, 86 [90 S.Ct. 1893, 1898, 26 L.Ed.2d 446] (*Williams*); *Duncan v. Louisiana* (1968) 391 U.S. 145, 149 [88 S.Ct. 1444, 1447-1448, 20 L.Ed.2d 491] (*Duncan*).) We assumed in *Hernandez, supra,* 49 Cal.3d at page 722, and *People v. Jones* (1973) 9 Cal.3d 546, 556 [108 Cal.Rptr. 345, 510 P.2d 705] (*Jones*), that the vicinage right is among those aspects of the right to jury trial that were incorporated through the Fourteenth Amendment and that, as a result, a defendant has a right to be tried in the county or district therein in which the offense was committed. Whether the Sixth Amendment vicinage clause applies to the states was not actually litigated in either case, however, and we did not consider whether the vicinage clause creates a constitutional right to trial before a jury drawn from the county in which a crime is committed. We held only that trial before a jury drawn from that county did not violate a defendant's right to a jury of the vicinage.

While the courts of other jurisdictions are divided on the incorporation question (see 1 LaFave et al., Criminal Procedure (2d ed. 1999) § 2.6(b), p. 568, and cases cited), since our decision in *Jones,* several courts have recognized that the United States Supreme Court has not held that the

vicinage clause of the Sixth Amendment applies to the states.[7] Most courts that have addressed the question conclude that it does not. In both *Hernandez* and *Jones*, this court read *Williams, supra*, 399 U.S. 78, as holding that vicinage was an essential aspect of the Sixth Amendment right to jury trial and therefore had been made applicable to the states by incorporation through the Fourteenth Amendment when the right to jury trial was incorporated. In fact, however, while vicinage was discussed in *Williams*, the court held only that a 12-person jury was not essential to the purpose of trial by jury and thus the states are not compelled to afford criminal defendants a 12-person jury.

Because the parties in their briefs assumed, based on *Hernandez* and *Jones*, that the Sixth Amendment right to trial before a jury of the vicinage has been incorporated into and thus applies to the states by virtue of the Fourteenth Amendment, we asked the parties to submit supplemental briefs on whether *Hernandez* and *Jones* should be reconsidered in light of the contrary views of other jurisdictions and legal commentators. ▄▄▀ ▀▀ ▀ Petitioner argues that the court should adhere to *Hernandez* and *Jones*, because they are well reasoned.[8] He argues that *Williams, supra*, 399 U.S. 78, *Duncan, supra*, 391 U.S. 145, and the history of the Sixth Amendment, establish that the vicinage requirement of the Sixth Amendment is applicable to the states through the Fourteenth Amendment. The

---

[7]Professor LaFave questions the assumption that the vicinage clause of the Sixth Amendment applies to the states. "While *Duncan v. Louisiana* is frequently described as having incorporated the Sixth Amendment's jury clause, what it actually incorporated was the right to jury trial recognized in the Sixth Amendment . . . . [¶] Neither *Duncan* nor subsequent Supreme Court cases applying the jury trial right to the states have spoken to the incorporation of the Sixth Amendment's vicinage provision. In reviewing the history of the Sixth Amendment's jury clause in *Williams v. Florida* the Court did note that, in contrast to other features of the common law jury that were included in the first draft of the Sixth Amendment but were deleted from the final version, the subject of vicinage remained in the Amendment as adopted (although the final version effected a 'compromise' by giving Congress 'the power to determine the actual size of the vicinage.)' *Williams* thereby suggested that the vicinage requirement had greater significance than those other features (e.g., jury unanimity), which the Court held not to be a part of the Sixth Amendment right to jury trial. It does not necessarily follow, however, that the Sixth Amendment's vicinage requirements are so essential to the purpose of the jury trial as to meet the ordered liberty standard as interpreted in *Duncan*. Certainly the historical record does not point in that direction." (1 LaFave et al., *Criminal Procedure, supra*, § 2.6(b), pp. 565-566, fns. omitted (LaFave).)

[8]Petitioner also invokes stare decisis principles in support of his argument that we should not reconsider the assumption in *Hernandez* and *Jones* that the vicinage clause of the Sixth Amendment applies to the states. The doctrine of stare decisis is flexible, however. It does not preclude correction of court-created error. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1213 [23 Cal.Rptr.2d 144, 858 P.2d 611].) The doctrine has less weight here, where the decisions that are to be reconsidered did not directly confront the question of incorporation of the vicinage clause through the Fourteenth Amendment, but instead, simply assumed the clause was applicable to the states.

People disagree, noting the varying views of other courts, and concluding that the vicinage requirement is not an essential or fundamental aspect of the right to jury trial that must be deemed to have been incorporated.

Petitioner's reliance on *Hernandez* and *Jones* for his argument that the Santa Clara County charge may not be tried in Riverside County affords us the opportunity to reexamine the assumption that the vicinage provision is among those provisions of the Sixth Amendment that were incorporated and made binding on the states through the due process clause of the Fourteenth Amendment. In doing so we have considered the history of both the Sixth and the Fourteenth Amendments, the concept of vicinage as it existed in this country and England when each amendment was adopted, the views of other courts, and the arguments of the parties. ■ We conclude that (1) the vicinage clause of the Sixth Amendment does not guarantee a right to trial before a jury drawn from the county in which the crime is committed, (2) regardless of the construction and application of the clause in federal courts, the history of the Fourteenth Amendment does not reflect a clear intent to make the vicinage clause applicable to the states, and (3) because the vicinage requirement of the Sixth Amendment is not a fundamental and essential feature of the right to jury trial, it was not made applicable to the states by incorporation through the Fourteenth Amendment. We therefore reject petitioner's claim that section 784.7 is invalid because it offends the vicinage provision of the Sixth Amendment.

We note first that contrary to our assumption in *Jones* and *Hernandez*, *Williams*, *supra*, 399 U.S. 78, did not hold that the vicinage provision of the Sixth Amendment had been made applicable to the states by incorporation through the Fourteenth Amendment. The only question in *Williams* was whether a 12-person jury was a feature of the common law right to trial by jury preserved by the Sixth Amendment. The right to trial by a jury of the vicinage was discussed only in dicta. In *Williams*, the court considered the history and purpose of the Sixth Amendment and held that only those aspects of the common law right to jury trial, as that right existed in 1789, that are essential to the purpose for guaranteeing a right to jury trial have been preserved in the Constitution. The court also stated: "Nothing in this history suggests, then, that we do violence to the letter of the Constitution by turning to other than purely historical considerations to determine which features of the jury system, as it existed at common law, were preserved in the Constitution. The relevant inquiry, as we see it, must be the function that the particular feature performs and its relation to the purposes of the jury trial." (*Williams,* at pp. 99-100 [90 S.Ct. at p. 1905].)

The court mentioned the vicinage provision of the Sixth Amendment in dicta amplifying its conclusion that not all features of the common law right to jury trial were preserved in the Sixth Amendment.

"While 'the intent of the Framers' is often an elusive quarry, the relevant constitutional history casts considerable doubt on the easy assumption in our past decisions that if a given feature existed in a jury at common law in 1789, then it was necessarily preserved in the Constitution. Provision for jury trial was first placed in the Constitution in Article III's mandate that '[t]he Trial of all Crimes . . . shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed.' The 'very scanty history [of this provision] in the records of the Constitutional Convention' sheds little light either way on the intended correlation between Article III's 'jury' and the features of the jury at common law. Indeed, pending and after the adoption of the Constitution, fears were expressed that Article III failed to preserve the common-law right to be tried by a 'jury of the vicinage.' That concern, as well as the concern to preserve the right to jury in civil as well as criminal cases, furnished part of the impetus for introducing amendments to the Constitution that ultimately resulted in the jury trial provisions of the Sixth and Seventh Amendments.[9] As introduced by James Madison in the House, the Amendment relating to jury trial in criminal cases would have provided that:

" 'The trial of all crimes . . . shall be by an impartial jury of freeholders of the vicinage, with the requisite of unanimity for conviction, of the right of challenge, and other accustomed requisites . . . .'

"The Amendment passed the House in substantially this form, but after more than a week of debate in the Senate it returned to the House considerably altered. While records of the actual debates that occurred in the Senate are not available, a letter from [James] Madison to Edmund Pendleton on September 14, 1789, indicates that one of the Senate's major objections was to the 'vicinage' requirement in the House version. A conference committee was appointed. As reported in a second letter by Madison on September 23, 1789, the Senate remained opposed to the vicinage requirement, partly because in its view the then-pending judiciary bill—which was debated at the same time as the Amendments—adequately preserved the common-law vicinage feature, making it unnecessary to freeze that requirement into the Constitution. 'The Senate,' wrote Madison: [¶] 'are . . . inflexible in opposing a definition of the *locality* of Juries.' The vicinage they contend is either

---

[9]The colonial practice of transporting colonists to England for trial was one of the explicit grievances referred to in the Declaration of Independence. In a bill of particulars against the King of England, the Declaration accuses the King of "transporting us beyond seas to be tried for pretended offenses . . . ." Even earlier, the First Continental Congress declared, in the October 14, 1774, Declaration of Rights N.C.D 5: "That the respective colonies are entitled to the common law of England, and more especially to the great and inestimable privilege of *being tried by their peers of the vicinage, according to the course of that law.*" (See 1 Schwartz, The Bill of Rights: A Documentary History (1971) p. 217; Perry, Sources of Our Liberties (1959) 270.) (See also *Duncan, supra,* 391 U.S. at p. 152.)

too vague or too strict a term; too vague if depending on limits to be fixed by the pleasure of the law, too strict if limited to the county. It was proposed to insert after the word Juries, "with the accustomed requisites," leaving the definition to be construed according to the judgment of professional men.' Even this could not be obtained. . . . The Senate suppose, also, that the provision for vicinage in the Judiciary bill will sufficiently quiet the fears which called for an amendment on this point.'

"The version that finally emerged from the Committee was the version that ultimately became the Sixth Amendment . . . ." (*Williams, supra*, 399 U.S. at pp. 92-96 [90 S.Ct. at pp. 1902-1903], fns. omitted; see also 4 LaFave et al., *supra*, § 16.1(b), pp. 467-470; Cogan, The Complete Bill of Rights (1997) Amendment VI, p. 385 et seq.; Berger, Government by Judiciary: The Transformation of the Fourteenth Amendment (2d ed. 1997) pp. 452-453.)

The vicinage clause of the Sixth Amendment resulting from this compromise expressly confers a right to trial by a "jury of the state and district where the crime shall have been committed, which district shall have been previously ascertained by law."

However, the Constitution left the definition of the vicinage or district from which a jury was to be drawn for criminal trials in the federal court to Congress. The proposal to limit vicinage to the county was rejected. It is apparent, therefore, that designation of a specific area within a state from which a jury was to be drawn was not considered so fundamental to the right to jury trial that it was intended to be protected by the vicinage clause.

A further indication that it was not the intent to limit vicinage to the location of a charged crime is found in the recognition that when the Sixth Amendment was being debated, the Federal Judiciary Act of 1789 to which the court referred in *Williams* was pending before Congress. That bill, enacted the day before Congress voted to send the Bill of Rights (including the Sixth Amendment) to the states for ratification, established judicial districts for each federal trial court. Those districts coincided with the boundaries of the individual states except those of Massachusetts and Virginia, each of which was divided into two districts. The additional districts were to become the states of Maine and Kentucky. At that time the vicinage from which juries were drawn in the states also encompassed the entire state. This was consistent with English practice which, at the time, no longer required that jurors come from the location of the alleged crime. Professor Blume explains: "From a period in which jurors were required, or at least presumed, to know the facts of their own knowledge, we move step by step

to a period in which they were supposed to obtain their knowledge only from evidence produced in open court. By 1764, Lord Mansfield was able to say: 'A juror should be as white Paper, and know neither Plaintiff nor Defendant, but judge the Issue merely as an abstract Proposition, upon the Evidence produced before him.'" (Blume, *The Place of Trial of Criminal Cases: Constitutional Vicinage and Venue* (1944) 43 Mich. L.Rev. 60, fns. omitted.) Professor Blume also concludes, based on the historical background of the vicinage and venue provisions of the Constitution, that "it may be asserted with confidence that the term 'vicinage' as used by the colonists in their struggle with England did not refer to the neighborhood of the crime or even to the county in which the crime was alleged to have been committed. By insisting on a right to a jury of the vicinage the colonists hoped to escape the hardship and danger of standing trial in some distant colony or in England." (*Id.* at pp. 65-66.) This too, supports a conclusion that, although the Sixth Amendment includes an express vicinage clause, it was not contemplated that federal districts would necessarily encompass less than an entire state.

The failure of Congress to specify that all criminal trials must be held at the location of the crime in the Judiciary Act of 1789 ((Sept. 24, 1789) 1 Stat. 73) is particularly persuasive. The provisions of that act presumably reflect the best contemporaneous understanding of what the constitutional vicinage clause demanded (see *Ruthenberg v. United States* (1918) 245 U.S. 480, 482 [38 S.Ct. 168, 169, 62 L.Ed. 414]). Notably, section 29 of the Judiciary Act of 1789 (1 Stat. 88) provided for trial in the county of the offense or by jurors from that county only for capital cases. That section reads: "*And be it further enacted,* That in cases punishable with death, the trial shall be had in the county where the offence was committed, or where that cannot be done without great inconvenience, twelve petit jurors at least shall be summoned from thence. And jurors in all cases to serve in the courts of the United States shall be designated by lot or otherwise in each State respectively according to the mode of forming juries therein now practised, so far as the laws of the same shall render such designation practicable by the courts or marshals of the United States; and the jurors shall have the same qualifications as are requisite for jurors by the laws of the State of which they are citizens, to serve in the highest courts of law of such State, and shall be returned as there shall be occasion for them, from such parts of the district from time to time as the court shall direct, so as shall be most favourable to an impartial trial, and so as not to incur an unnecessary expense, or unduly to burthen the citizens of any part of the district with such services. . . ." (*Ibid.,* fn. omitted.)

That section included the following footnote: "The Circuit Courts of the United States are bound to try all crimes committed within the district,

which are duly presented before it; but not to try them in the county where they have been committed. The United States *v.* Wilson and Porter, Baldwin's C.C.R. 78." (1 Stat. 88.)

Contemporary understanding of the Sixth Amendment vicinage provision thus does not support a conclusion that the jury summoned in a federal court to try a criminal case must be made up of residents of the location of the crime or that the area from which jurors are summoned must include that location.

Even were we to assume that the vicinage clause contemplated trial in the neighborhood of the crime, however, the question would remain as to whether the vicinage clause was incorporated and made applicable to the states through the Fourteenth Amendment incorporation of the Sixth Amendment right to trial by jury. To resolve the incorporation question, we look to whether Congress and the states that ratified the Fourteenth Amendment expressed an intent that the vicinage clause, then applicable only in federal criminal trials, apply to the states or, if not, whether the right must be deemed so fundamental and necessary to the purpose of jury trial that such intent must be presumed.

The first inquiry is readily answered. Nothing in the history of the Fourteenth Amendment identified by the parties or discovered in our own research suggests to us that in making the right to jury trial applicable to the states, there was an intent to include the vicinage clause of the Sixth Amendment.[10] Nor is there any reason in logic to suppose that either Congress or the ratifying states would intend to do so. There was no reason

---

[10]One constitutional scholar suggests that an oral report to Congress by Senator Howard introducing the proposed Fourteenth Amendment reflects an intent to incorporate and make applicable to the states the right to trial by a jury of the vicinage. Professor Chester Antieau states: "Clearly, the Congressional proponents of the Fourteenth Amendment intended that it would make the Sixth Amendment jury trial in criminal cases binding upon the States. Senator Jacob M. Howard of Michigan, who introduced the Amendment in the Senate, informed his colleagues and the people that among the rights made binding upon the States, would be the 'right of an accused person . . . to be tried by an impartial jury of the vicinage.' " (Antieau, The Intended Significance of the Fourteenth Amendment (1997) pp. 141-142.)

As Raoul Berger, also a constitutional scholar, points out however, Senator Howard's introduction of the Fourteenth Amendment was occasioned hurriedly because of the sudden illness of the chairman of the drafting committee, and subsequent speakers did not have the same understanding of the purpose of the Fourteenth Amendment as that expressed by Senator Howard. Berger concludes, based on the circumstances in which Senator Howard's remarks were made and the strongly expressed views of other members of Congress, that Congress did not intend to interfere with state autonomy in this manner. (Berger, Government by Judiciary, The Transformation of the Fourteenth Amendment, *supra,* at pp. 151-174, 182-186.)

for Congress to impose upon the states, or for the ratifying states to agree to imposition on them of, federal judicial districts that were to be created by Congress and were subject to revision as the needs of the federal judiciary demanded. There was certainly no reason for the ratifying states in which vicinage was coterminous with the states' boundaries to subject their courts to limits that might be created by Congress in the future.

Absent an express intent on the part of Congress and the ratifying states to make the vicinage clause applicable to the states, *Duncan* and *Williams* counsel that we look to whether this feature of the right to jury trial is so essential to the purpose of preserving the right to jury trial in the Sixth Amendment as to support an inference that this intent existed. *Duncan, supra,* 391 U.S. at pages 148-149 [88 S.Ct. at pages 1446-1448], teaches that a Sixth Amendment right is protected against state infringement by the Fourteenth Amendment if the right is fundamental to the American system of justice or essential to a fair trial. *Duncan* reasoned that the right to trial by jury was considered essential to give a criminal defendant "an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." (*Id.* at p. 156 [88 S.Ct. at p. 1451]; *Williams, supra,* 399 U.S. at p. 100 [90 S.Ct. at pp. 1905-1906].) Thus, the purpose of the right to jury trial, the court concluded in *Williams,* is to prevent oppression by the government. (*Williams, supra,* 399 U.S. at p. 100 [90 S.Ct. at p. 1906].) "Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence" (*ibid.*), a purpose that the court held was not dependent on having a jury of 12 persons.

We reach the same conclusion as to the right of trial by a jury of the vicinage, regardless of whether the jury is drawn from the county in which the offense was committed or from the neighborhood in which it was committed. Vicinage is not a right that is fundamental and essential to the purpose of the constitutional right to jury trial, the test for incorporation

---

In any event, although the remarks by Senator Howard (among others) were relied upon by Justice Black in support of his view that the framers of the Fourteenth Amendment intended to fully incorporate all the Bill of Rights into that amendment (see *Adamson v. California* (1947) 332 U.S. 46, 73-75 [67 S. Ct. 1672, 1686-1688, 91 L.Ed. 1903, 171 A.L.R. 1223] (dis. opn. by Black, J.); *id.* at pp. 104-107 [67 S.Ct. at pp. 1702-1704] (appen. to dis. opn. by Black, J. [quoting extended excerpts from Sen. Howard's remarks]), a majority of the United States Supreme Court, in interpreting the reach and effect of the Fourteenth Amendment, has never treated Senator Howard's remarks as an authoritative statement of the amendment's scope or meaning. (See, e.g., *Bartkus v. Illinois* (1959) 359 U.S. 121, 124-128 [79 S.Ct. 676, 678-681, 3 L.Ed.2d 684]. See generally 1 LaFave et al., *supra,* § 2.3(a), pp. 489-502.)

from the Fourteenth Amendment suggested in *Duncan* and *Williams*. The geographic location from which the jury is selected has no bearing on how the jury selection is influenced by the prosecutor or on the competence and ethics of the judge. A Riverside County jury offers no less protection against governmental oppression than would a Santa Clara County jury. Additionally, as the Court of Appeal recognized, trial in the locality in which a crime was committed, although important when early common law vicinage rights were created because jurors were expected to have knowledge about the defendant, the witnesses, and the crime itself, was no longer the case when the Sixth and Fourteenth Amendments were adopted. Today, jurors must render their verdict based only on evidence introduced in court.

Because a vicinage guarantee does not serve the purpose of protecting a criminal defendant from government oppression and is not necessary to ensure a fair trial, it is not an essential feature of the right to jury trial. For that reason we conclude that the vicinage clause of the Sixth Amendment is not applicable to the states through the Fourteenth Amendment.

Other jurisdictions also have concluded that the vicinage requirement does not apply to the states. In *State v. Bowman* (Me. 1999) 588 A.2d 728, 731, the Supreme Judicial Court of Maine held that the vicinage clause of the Sixth Amendment "has no application to a state criminal prosecution," relying on the holding in *State v. Byrnes* (1967) 260 Iowa 765, 769 [150 N.W.2d 280, 282-283], that this provision applies only to prosecution in federal courts. The Iowa Supreme Court had relied in turn on *People v. Lee* (1952) 334 Mich. 217, 224 [54 N.W.2d 305, 308], in which the Michigan Supreme Court held: " 'By the provisions of the Federal Constitution, criminal trials must take place in the state and district wherein the crime was committed, but it was long ago determined that these provisions apply only to prosecutions in Federal courts.' " In *State of Maryland v. Brown* (D.Md. 1969) 295 F.Supp. 63, 79-81, the court denied a state prisoner's petition seeking transfer of a criminal prosecution from the state to the federal court. It held that the Sixth Amendment did not preclude transfer of a criminal trial on motion of the prosecutor and over the objection of the defendant to a county other than that in which the offense was committed. The court examined the language and history of the vicinage clause, reasoned that "district" as used in the vicinage requirement did not mean "county," and held that the requirement was inapplicable to the state trial. (*Brown,* at pp. 80-82.)

In *Commonwealth v. Duteau* (1981) 384 Mass. 321, 331-332 [424 N.E.2d 1119, 1126], the court stated that the vicinage requirement of the Sixth Amendment "has never been held to apply to the States, and might not be

even relevant to State prosecutions since it is generally agreed that the word 'district' therein refers to the Federal judicial districts created by Congress." It concluded, however, that the Sixth Amendment was irrelevant because it found a nonconstitutional basis for ordering that residents of the place of the crime be included in the jury pool.

In *Bath v. State* (Tex.App. 1997) 951 S.W.2d 11, 19, the Texas Court of Criminal Appeals rejected a vicinage challenge based on the Sixth Amendment, commenting: "Neither federal nor state authorities, however, currently require application of this clause to state prosecutions."

Two panels of the Fifth Circuit Court of Appeals have addressed the incorporation question and held that the vicinage provision of the Sixth Amendment does not apply to the states. In the first of those cases, *Martin v. Beto* (5th Cir. 1968) 397 F.2d 741, 748, the court recognized that the vicinage provision of the Sixth Amendment "has not thus far been held applicable to the States" by the Supreme Court. Subsequently, in *Cook v. Morrill* (5th Cir. 1986) 783 F.2d 593, 595-596, a different panel reaffirmed that holding and expressed its view that if the United States Supreme Court was faced with the issue it "would hold that the right of vicinage does not apply to the states. The Supreme Court has applied to the states only those provisions of the sixth amendment that the Court finds 'fundamental and essential to a fair trial.' *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed. 2d 799, 804 (1963) (quoting *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942)). The right to a trial in the district where the defendant committed the crime is not one of those rights which rises to the level of being 'fundamental and essential to a fair trial.' This does not mean that a state necessarily has the right to try a defendant anywhere the state chooses. In a state conviction where the change of venue resulted in a conviction obtained without due process, a petitioner could obtain relief on due process grounds. *Martin v. Beto*, 397 F.2d at 748-49."

The Third Circuit Court of Appeals undertook a more extensive examination of the history of the Sixth Amendment vicinage requirement in *Zicarelli v. Gray* (3d Cir. 1976) 543 F.2d 466. The majority opinion recited the history of article III of the United States Constitution and the Sixth Amendment described by the Supreme Court in *Williams, supra*, 399 U.S. 78. The court then turned to the incorporation question, stating in dictum: "Before the Supreme Court's decision in *Duncan v. Louisiana*, which applied the basic constitutional guarantee of a jury trial in a criminal case to prosecutions by the states, through the medium of the due process clause, the state-and-district clause was naturally interpreted only in the context of federal prosecutions. [¶] After its decision in *Duncan*, the Supreme Court ruled that

a particular element of the sixth amendment jury guarantee is applicable to prosecutions by the states only if it is fundamental to the central purpose of the requirement of a jury trial in a criminal prosecution. The central purpose of the jury trial 'is to prevent oppression by the Government by providing a "safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge." . . . "Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the common sense judgment of a group of laymen . . ." ' If the state-and-district guarantee does not further that purpose, it will not be held to limit the discretion of the state to try a defendant without heeding that clause of the sixth amendment." (*Zicarelli v. Gray, supra,* 543 F.2d at pp. 478-479, fns. omitted.) Because the state jury before which the defendant before it had been tried was drawn from both the state and the federal district of New Jersey, the majority found it unnecessary to decide the incorporation question, however, and simply assumed for the purpose of the case before it that the vicinage clause was applicable to the states.[11]

A panel of the Third Circuit revisited another Sixth Amendment incorporation question in *Zicarelli v. Dietz* (3d Cir. 1980) 633 F.2d 312, when the same defendant returned to the court after exhausting his state remedies as to his Sixth Amendment-based fair cross-section and district "previously ascertained by law" claims. Discussing the "previously ascertained by law" phrase, a part of the vicinage clause, the court noted that the view of Justice Black that the Fourteenth Amendment due process clause completely incorporated the Bill of Rights (*Adamson v. California* (1947) 332 U.S. 46, 71-72 [67 S.Ct. 1672, 1686, 91 L.Ed. 1903, 171 A.L.R. 1223] (dis. opn. of Black, J.)), had not been adopted by the Supreme Court. It then observed:

"The determination whether a right covered by the Fifth and Sixth Amendments with respect to federal criminal proceedings is also protected against state action by the Fourteenth Amendment has been said to depend on whether the right is among those 'fundamental principles of liberty and justice which lie at the base of all our civil and political institutions,' [citations]; whether it is 'basic in our system of jurisprudence,' [citation]; and whether it is 'a fundamental right, essential to a fair trial.' [Citations.]

"The right to jury trial in the Sixth Amendment was incorporated within the concept of due process and hence applicable to the states in serious

---

[11]In a concurring and dissenting opinion, the third member of the panel expressed the view that excluding all residents of the area in which the offense occurred violated the fair cross-section requirements of the Sixth and Fourteenth Amendments because there were substantial differences between residents of different geographic areas, with the result that the venire was not reasonably representative of the community. (*Zicarelli v. Gray, supra,* 543 F.2d at pp. 488-489 (conc. & dis. opn. of Hunter, J.).)

criminal cases because a jury was deemed to give the defendant 'an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge.' *Duncan* v. *Louisiana*, 391 U.S. at 156, 88 S.Ct. at 1451. However, this does not mean that every feature of a jury trial as it existed at common law is necessarily applicable to the states. Unanimous jury decisions, constitutionally required in federal prosecutions, are not required in state trials. [Citation.] Also, because the common law jury composition of precisely twelve persons is considered an historical accident, it was held to be unnecessary to effect the purposes of the jury system and hence subject to change by the states. *Williams* v. *Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970)." (*Zicarelli v. Dietz, supra,* 633 F.2d at pp. 320-321.)

Applying those tests, the court attempted to ascertain the purpose of the "previously ascertained by law" requirement, concluding that it was intended as a check on the ability of Congress to alter judicial districts in order to affect a criminal offense after its commission. (*Zicarelli v. Dietz, supra,* 633 F.2d at p. 323.) That purpose, the court concluded, had no applicability to the states, which did not have the power to establish or redistrict federal judicial districts. Those districts, the court held, were the districts to which the Sixth Amendment referred. The court then proceeded to the analysis it believed the Supreme Court would follow in determining whether the right was an essential and fundamental right, found substantial difference between the right to have the jury drawn from a previously ascertained geographic area and the rights theretofore held to be so essential that they applied to the states, and concluded that this aspect of the vicinage requirement was not among those applicable to the states. (*Zicarelli v. Dietz, supra,* at pp. 325-326.)

In *Caudill v. Scott* (6th Cir. 1988) 857 F.2d 344, 345-346, after examination of the language of the Judiciary Act of 1789, article III, section 2 of the United States Constitution, and the Sixth Amendment, the court agreed with the magistrate that "districts" as used in the Amendment referred only to federal judicial districts.

In *Mareska v. State* (Ind.Ct.App. 1989) 534 N.E.2d 246, 249-250, however, the Indiana Court of Appeals relied on the constitutional history recited and analyses utilized in *Jones, supra,* 9 Cal.3d 546, and on *Alvarado v. State* (Alaska 1971) 486 P.2d 891, to hold that trial by a jury from which residents of the location of the crime were systematically excluded violated a defendant's Sixth Amendment right to trial by a jury of the vicinage. In *Alvarado v. State*, the court did not base its decision on violation of the vicinage clause. The analysis was directed to whether the jury before which the Native

Alaskan defendant had been tried reflected a fair cross-section of the community and was thus the constitutionally guaranteed impartial jury, even though the jury was drawn from an area that excluded virtually all Native Alaskan villages where the culture was profoundly different from that in the area of Anchorage from which the jury was drawn. The Alaska Supreme Court did not address whether the vicinage requirement of the Sixth Amendment had been incorporated through the Fourteenth Amendment, holding instead that the incorporation of the Sixth Amendment right to jury trial included the right to an impartial jury. We do not find the *Mareska* decision persuasive, therefore.

Petitioner also relies on decisions recognizing the interest of the community in which the charged crime was committed as a basis for requiring trial in that location. (See *U.S. v. Dubon-Otero* (D.P.R. 1999) 76 F.Supp. 2d 161, 165 ["To this day, the interest of a community in trying those who violate its laws remains a central tenet of our judicial system."].) We find nothing in our constitutional history that would support a conclusion that the vicinage requirement of the Sixth Amendment was intended to further this interest, which clearly has no relation to ensuring a fair trial.[12]

We thus find nothing in the decisions construing the vicinage provision of the Sixth Amendment that mandates invalidation of section 784.7 on the ground urged by petitioner. Because the history of the Fourteenth Amendment does not indicate an intent to incorporate the vicinage clause of the Sixth Amendment, and vicinage today is not a fundamental aspect of the right to jury trial necessary to ensure a fair trial, we conclude that the vicinage clause is not applicable in a state criminal trial.[13] Therefore, it is not necessary to address petitioner's argument that the Sixth Amendment requirement that the vicinage be "previously ascertained by law" bars trial in Riverside County.

---

[12]See, however, Engel, *The Public's Vicinage Right in a Constitutional Argument* (2000) 75 N.Y.U. L.Rev. 1658, in which the author argues that a constitutional basis for recognizing such a right is implicit in the vicinage requirement which presumes that a jury from the community in which a crime is committed will try the defendant. Even while arguing that the community has a constitutional right to try persons charged with crimes allegedly committed there, however, Engel concedes that the vicinage right guaranteed by the Sixth Amendment is simply a right to trial in a district defined in advance by the state legislature. (Engel, at p. 1709.)

[13]To the extent that this court's prior decisions in *People v. Jones, supra,* 9 Cal.3d 546, *Hernandez v. Municipal Court, supra,* 49 Cal.3d 713, *People v. Coddington* (2000) 23 Cal.4th 529, 573 [97 Cal.Rptr.2d 528, 2 P.3d 1081], *People v. Danielson* (1992) 3 Cal.4th 691, 704 [13 Cal.Rptr.2d 1, 838 P.2d 729], *People v. Hill* (1992) 3 Cal.4th 959, 984-985 [13 Cal.Rptr.2d 475, 839 P.2d 984], *People v. Guzman, supra,* 45 Cal.3d 915, 938, and *O'Hare v. Superior Court* (1987) 43 Cal.3d 86, 94-95 [233 Cal.Rptr. 332, 729 P.2d 766], contain language to the contrary, the decisions are overruled.

## 2. *Article I, section 30, subdivision (a) of the California Constitution.*

Article I, section 30, subdivision (a) of the California Constitution (article I, section 30(a)) provides: "This Constitution shall not be construed by the courts to prohibit the joining of criminal cases as prescribed by the Legislature or by the people through the initiative process."

Because section 784.7 may result in joinder or consolidation for trial certain sexual or child abuse offenses committed in different counties, we invited the parties to submit briefs on the impact, if any, of article I, section 30(a) on the court's authority to consider petitioner's claim that trial of the Santa Clara County charge in Riverside County denies him the vicinage right implied in article I, section 16.

Article I, section 30(a) was adopted by initiative in 1990 as part of Proposition 115, along with section 954.1. Petitioner suggests that article I, section 30(a) may have been intended only to limit the holding of *Williams v. Superior Court* (1984) 36 Cal.3d 441, 448 [204 Cal.Rptr. 700, 683 P.2d 699]. There, this court held that cross-admissibility of evidence was one factor to be considered when a defendant seeks severance of charges that have been joined or consolidated for trial. Section 954.1 provides that evidence need not be cross-admissible before offenses may be jointly tried before the same trier of fact. (See *People v. Hill* (1995) 34 Cal.App.4th 727, 734-735 [41 Cal.Rptr.2d 39]; *Belton v. Superior Court* (1993) 19 Cal.App.4th 1279, 1284 [24 Cal.Rptr.2d 34].) The People do not agree that this was the sole purpose for which article I, section 30(a) was decided, and point out that in *Belton* the court discussed cross-admissibility of evidence only in regard to the effect of Penal Code section 954.1. The *Belton* court later commented that "Proposition 115 also precludes any possible future judicial construction (unless compelled by the federal Constitution) to the effect that cross-admissibility of evidence is a requisite of joinder (or the denial of a motion for severance.)" (*Belton, supra,* 19 Cal.App.4th at p. 1286.) That discussion, the People claim, cannot fairly be read as limiting the intent underlying article I, section 30(a) in the manner suggested by petitioner.

The People argue that article I, section 30(a) prevents the court from construing article I, section 16 in a manner that prevents joining of cases prescribed by the Legislature. The People contend that an interpretation of article I, section 16 that would prohibit the Legislature from redefining the applicable judicial district for the offenses enumerated in section 784.7 to include more than one county for both venue and vicinage purposes is barred by article I, section 30(a).

We conclude that we need not resolve these conflicting views of article I, section 30(a), in this proceeding. As we shall explain, we have concluded

that, contrary to petitioner's contention, section 784.7 does not in any event violate article I, section 16 of the California Constitution. Accordingly, we need not, and do not, express any view as to the interrelationship, if any, between sections 16 and 30 of article I of the California Constitution.

3. *Vicinage rights under article I, section 16.*

Article I, section 16, a successor to article I, section 7 of the Constitution of 1849, a provision of the Declaration of Rights, now provides in pertinent part: "Trial by jury is an inviolate right and shall be secured to all, but in a civil case three-fourths of the jury may render a verdict. . . . [¶] . . . [¶] In criminal actions in which a felony is charged, the jury shall consist of 12 persons. In criminal actions in which a misdemeanor is charged, the jury shall consist of 12 persons or a lesser number agreed on by the parties in open court." The jury trial right thereby preserved is the right that existed at common law when the California Constitution was adopted in 1849. (*Dorsey v. Barba* (1952) 38 Cal.2d 350, 355 [240 P.2d 604].) Neither article I, section 16, which was adopted in 1974, nor its 1849 predecessor or any other provision of the California Constitution makes express reference to the place of trial or the location from which a jury is to be drawn. Nonetheless, article I, section 16 has long been construed as encompassing an implicit vicinage right. (*People v. Hill, supra,* 3 Cal.4th 959, 984; *People v. Danielson* (1992) 3 Cal.4th 691, 704 [13 Cal.Rptr.2d 1, 838 P.2d 729]; *Hernandez, supra,* 49 Cal.3d at p. 721.)

■ However, "[t]he constitutional guarantee does not require adherence to the letter of common law practice, and new procedures better suited to the efficient administration of justice may be substituted if there is no impairment of the substantial features of a jury trial. (*People v. Hickman,* 204 Cal. 470, 476 [268 P. 909, 270 P. 1117].)" (*Dorsey v. Barba, supra,* 38 Cal.2d at p. 356.)

■ We reject at the outset petitioner's claim that there is not a sufficient nexus between the Santa Clara County offense and Riverside County to support trial in the latter county. Petitioner assumes that some element of the crime or preparation must occur in the county of trial, but that is not the rule. Section 784.7 creates a multicounty venue for trial of offenses involving sexual or child abuse by the same defendant against the same victim. It is sufficient that the crime with which petitioner is charged in Riverside County is an offense related in that way to the Santa Clara County offense. The continuing pattern of abuse of the same victim constitutes a sufficient nexus to justify the legislative decision to permit trial of all offenses in a single county.

Petitioner relies in part on *Powell, supra,* 87 Cal. 348, for his argument that article I, section 16 entitles him to trial before a jury drawn from the neighborhood or county in which his offense allegedly was committed. There, this court held that a statute that permitted a change of venue on motion of the prosecution and over the objections of a defendant violated the defendant's right to trial in the vicinage, a common law right that was incorporated into the state Constitution. (*Powell,* at pp. 360-365.) *Powell* was implicitly limited, if not overruled, by *People v. Prather, supra,* 134 Cal. 386, however, where the court upheld the validity of section 786, which then provided that " '[w]hen property taken in one county by burglary, robbery, larceny, or embezzlement, has been brought into another, the jurisdiction of the offense is in either county.' " (Quoted in *Prather,* at p. 386.) Rejecting a claim that the information was deficient as it did not charge the commission of the offense in the second county, the court held that the courts of the second county had jurisdiction to prosecute the thief for the offense originally committed, not for a new offense. (*Prather,* at p. 388.) Chief Justice Beatty dissented, being of the view that the decision was in direct conflict with *Powell* (*Prather,* at p. 390), an opinion that the majority implicitly rejected.

Subsequently, in *People v. Martin* (1922) 188 Cal. 281 [205 P. 121, 21 A.L.R. 1399], we upheld application of section 785 to the trial of a bigamy charge in a county other than that in which the offense had been committed. The defendant had been extradited from Arizona to San Diego County for trial on a charge of larceny committed in that county. After extradition, the bigamy charge was added. At that time, section 785 permitted trial of a bigamy charge in either the county in which the offense was committed or the county in which the defendant was apprehended. The defendant's vicinage claim was rejected on the ground that originally bigamy was an ecclesiastical concern, not a common law crime, and, at the time the California Constitution was adopted, venue for statutory bigamy prosecutions in England was either the place of commission or the place where the person was apprehended. Thus, common law had never restricted trial of a bigamy charge to the county in which the offense was committed. (*Martin,* at pp. 286-287.)

Shortly thereafter the Court of Appeal upheld former section 787 against a vicinage claim. (*Richardson, supra,* 138 Cal.App. 404.) There, the defendant challenged the validity of former section 787 (see now § 4701), which permitted trial in any county of a person charged with escaping from any state prison. The court reasoned that the California Constitution makes the place of trial subject to legislative determination. This was consistent with the common law jury trial right which, when the California Constitution was

adopted, had as its essential attributes: number, impartiality and unanimity. The court explained its conclusion at length: "We are fully aware of the fact that a different interpretation of the so-called common-law right to trial by a jury of the vicinage is to be found in the language of some of the decisions. We believe, however, that these decisions hark back to the days of the ancient common law when the accused could only be tried by a jury selected from the county in which the offense had been committed. In early times the rule was so strict that if an offense was committed partly in one county and partly in another, such offense was not punishable at all. (See *People* v. *Powell*, *supra*, p. 258.) But the common-law right to trial by jury which was guaranteed by our Constitution was not the right to trial by jury as known to the ancient common law, but was the right to trial by jury as it existed at common law at the time that the Constitution of this state was adopted. (*People* v. *Martin*, *supra*, p. 285; *Ex parte Wong You Ting* [(1895)] 106 Cal. 296, 299 [39 P. 627].) When we refer to the 'common law' at the time that our Constitution was adopted we include the whole body of the common law of England as it stood at that time influenced by statute. (*Martin* v. *Superior Court* [(1917)] 176 Cal. 289, 293 [168 P. 135].) As so influenced by statute, the common-law right to trial by jury no longer had as one of its essential attributes a right to trial by a jury selected from the vicinage or county where the crime was committed. It is conceded that statutes had been enacted in England permitting the prosecution of many crimes either in the county where the crime had been committed or in the county where the accused had been apprehended. It also appears that statutes had authorized the prosecution of certain crimes in any county where the accused was in custody. . . . These statutes constituted a recognition of the fact that, owing to the development of the trial by jury and the resulting changes in the nature thereof, many of the reasons existing in earlier times for requiring the trial to be had in the place where the crime had been committed had ceased to exist. We therefore conclude that the real essential attributes of the so-called common-law jury trial were at all times 'number, impartiality and unanimity' (*People* v. *Peete* [(1921)] 54 Cal.App. 333, 366 [202 P. 51]); that at the time our Constitution was adopted the only right which the accused had under the common law of England with respect to the place from which the jury should be selected was a right to have the jury selected from the vicinage or county which might be fixed by law for the place of trial . . . ." (*Richardson*, *supra*, 138 Cal.App. at pp. 407-409.)

The *Richardson* court also reasoned that *People v. Prather*, *supra*, 134 Cal. 386, and *Bradford v. Glen* (1922) 188 Cal. 350 [205 P. 449] had implicitly overruled *Powell*. *Bradford v. Glen* did not do so, as the only question addressed there was whether escape while outside the walls of a prison on a work assignment in another county constituted escape from a prison within

the meaning of former section 787. *People v. Martin, supra,* 188 Cal. 281, does support that conclusion, however. Although it agreed with *Powell* that trial in the vicinage was an incident of the common law right to jury trial, the *Prather* court permitted trial of the bigamy charge in a county other than that in which the offense was committed. In so doing, the court necessarily implied that it did not deem trial in the vicinage an essential attribute of the right to jury trial that was preserved by the California Constitution for all criminal charges.

The power of the Legislature to fix the place of trial of a criminal offense in a county other than the county of commission is reflected in several statutes, some of which (or their predecessors) were already in place at the time the Constitution of 1879 was adopted. (See, e.g., § 777a [charge of failure to provide triable in county in which child cared for or where parent apprehended]; § 777b [perjury outside state triable in county where matter regarding which it relates occurred]; § 778 [enacted 1872—offense consummated in state triable where consummated]; § 781 [enacted 1872—offense committed or consummated in more than one county triable in either]; § 782 [enacted 1872—offense on or within 500 yards of county boundary triable in either]; § 783 [enacted 1872—in-state offenses on vehicles, vessels, trains, etc. triable in any county through which carrier passes or trip terminates]; § 783.5 [offense in multicounty park triable in any county in which park lies]; § 784 [enacted 1872—kidnapping triable in county where committed, out of which person taken, or where preparatory acts occurred]; § 784.5 [child abduction triable in county where victim resides or agency with custody located or to which child taken, or where child found]; § 785 [enacted 1872—incest and bigamy triable in county where offense occurs or defendant apprehended]; § 786 [enacted 1872—burglary, robbery, theft, embezzlement, receipt of stolen property triable in county where property taken or in county to which taken]; § 788 [enacted 1872—treason where overt act committed out of state triable in any county]; § 789 [enacted 1872—out-of-state theft or receipt of stolen goods triable in any county to which property brought]; and § 790 [murder/manslaughter triable in county where injury inflicted or where victim dies, or where body found].)

Nothing in the history of the California Constitution suggests that the drafters or the electorate intended to restrict the power of the Legislature reflected in those vicinage statutes already in effect in 1879, to designate the vicinage or place of trial of criminal offenses. That legislative power has been recognized repeatedly. (*Jackson v. Superior Court* (1970) 13 Cal.App.3d 440, 443 [91 Cal.Rptr. 565, 46 A.L.R.3d 290]; *Richardson, supra,* 138 Cal.App. at p. 407; *People v. McGowan* (1932) 127 Cal.App. 39, 43 [14 P.2d 1036]; *Matter of McDonald* (1912) 20 Cal.App. 641, 642 [129 P. 957].)

Accordingly, under the relevant California precedent, the right to a trial by a jury of the vicinage, as guaranteed by the California Constitution, is not violated by trial in a county having a reasonable relationship to the offense or to other crimes committed by the defendant against the same victim. We do not hold here that a crime may be tried anywhere. The Legislature's power to designate the place for trial of a criminal offense is limited by the requirement that there be a reasonable relationship or nexus between the place designated for trial and the commission of the offense. Repeated abuse of the same child or spouse in more than one county creates that nexus.

The venue authorized by section 784.7 is not arbitrary. It is reasonable for the Legislature to conclude that this pattern of conduct is akin to a continuing offense and to conclude that the victim and other witnesses should not be burdened with having to testify in multiple trials in different counties.

We conclude that, insofar as article I, section 16, applies, Penal Code section 784.7 is constitutionally valid and does not violate petitioner's right to trial by a jury of the vicinage. Trial in Riverside County will be a trial before a jury drawn from the vicinage as that right was understood and intended when article I, section 16 was adopted.

That does not end our inquiry, however. Although this is a facial challenge to section 784.7, we must determine if the vicinage right implied in article I, section 16, like the Sixth Amendment, restricts trial of criminal offenses to venues that have been "previously ascertained by law" and, if so, whether that restriction requires that the vicinage be determined before commission of the offense or is satisfied by a venue statute that becomes operative before trial. We must do so because the petitioner's offenses were committed before section 784.7 became law, a fact of which we have taken judicial notice. The parties have briefed the question at our request and there is no need to take evidence or hold further hearings to determine whether this prosecution may proceed in Riverside County.

Petitioner argues that since the vicinage right implied in article I, section 16 is at least as broad as that guaranteed by the Sixth Amendment, it necessarily includes the "previously ascertained by law" requirement. Relying on *Zicarelli v. Dietz, supra,* 633 F.2d at page 323, he argues that article I, section 16 precludes alteration of the district from which the jury is drawn after commission of the crime. The People argue that because vicinage is a trial right, and section 784.7 acts prospectively, the "previously ascertained by law" requirement permits trial in a district established at any time before trial. They also contend that the restriction was intended to apply only to the

federal government to prevent any attempt to move a trial to a location that would make it difficult for the defendant to mount a defense.

 We need not resolve these conflicting views, however, as we agree with the People that the vicinage right implied in article I, section 16, is not the Sixth Amendment right. It is the common law right that existed in 1850. The common law did not include a requirement comparable to the "previously ascertained by law" requirement of the Sixth Amendment vicinage clause.

Although the Sixth Amendment, ratified in 1791, was in force when the right to trial by jury was placed in the Declaration of Rights of the California Constitution of 1849, nothing in our examination of the history of article I, section 16, and survey of the vicinage provisions of the constitutions of other states suggests that the delegates to the California Constitutional Conventions in 1849 or 1879 intended to replicate the Sixth Amendment jury trial provision.

Article I, section 16, was added to the Constitution on November 4, 1974, but is derived from former section 7 of article I, which derived in turn from article I, section 3 of the Constitution of 1849. The 1849 provision provided: "The right of trial by jury shall be secured to all, and remain inviolate forever, but a jury trial may be waived by the parties, in all civil cases, in the manner prescribed by law." That language does not track the wording of the jury trial provision of the Sixth Amendment, which provides only that in criminal prosecutions the accused has the "right to . . . trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ."

In *Koppikus v. State Capitol Commissioners* (1860) 16 Cal. 248, 253-254 (*Koppikus*), a civil action in equity in which the court held there was no right to jury trial to determine compensation for land taken for the site of the State Capitol, the court offered the contemporary understanding of the state constitutional right to jury trial: "The provision of the Constitution, that 'the right of trial by jury shall be secured to all, and remain inviolate forever,' applies only to civil and criminal cases in which an issue of fact is joined. The language was used with reference to the right as it exists at common law. It is true, that the civil law was in force in this State at the time of the adoption of the Constitution, but its framers were, with few exceptions, from States where the common law prevails, and where the language used has a well-defined meaning. The people who, by their votes, adopted the Constitution, at least a vast majority of them, were also from countries where the common law is in force, and they looked upon the right secured as the right

there known and there held inviolate. It is in this common law sense that the language has always been regarded by the Court of this State. It is a right 'secured to all,' and 'inviolate forever,' in cases in which it is exercised in the administration of justice according to the course of the common law, as that law is understood in the several States of the Union." Nothing in the *Koppikus* opinion suggests that the drafters had the Sixth Amendment in mind when article I, section 3 of the 1849 Constitution was drafted.

The same is true of the court's opinion in *Powell, supra,* 87 Cal.348, in which vicinage was in issue. There we looked to Blackstone, not the Sixth Amendment, for a description of the common law right incorporated into the jury trial provision of the 1879 Constitution. Quoting *Koppikus,* the court repeated the observation that the language used in the Constitution had a well-defined meaning and was used with reference to the common law right to jury trial. (*Powell,* at p. 356.) Some of the cases on which the court relied do mention the Sixth Amendment as a model for the state vicinage provision, but most of those state constitutions had not adopted the "previously ascertained by law" requirement. (See *Kirk v. State* (1860) 41 Tenn. 344 [Tennessee Constitution provided that "the accused hath a right to a speedy public trial by an impartial jury of the county in which the crime shall have been committed"]; *Osborn v. State* (1867) 24 Ark. 629 [Ark. Const., art. 2, § 11, provided, inter alia, a right "in prosecutions by indictment or presentment, [to] a speedy public trial by an impartial jury of the county or district in which the crime may have been committed"; the Arkansas Supreme Court said this provision was "substantially the same declaration" as in the 6th Amend.]; *Ex parte Rivers* (1867) 40 Ala. 712 [Alabama Bill of Rights, § 11, entitled an accused to a "speedy public trial by an impartial jury of the county or district in which the offense was committed"]; *State v. Knapp* (1888) 40 Kan. 148 [Kansas Bill of Rights, § 10, entitled defendant to "a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed"].)

*Wheeler v. State* (1869) 24 Wis. 52, stated that section 7 of article I of the Wisconsin Constitution was "somewhat similar" to the Sixth Amendment, but, unlike the California Constitution, the Wisconsin Constitution had a "previously ascertained by law" requirement.

There is no pattern in state constitutional vicinage clauses adopted before or at the time either the 1849 or 1879 Constitution was adopted to suggest that the delegates intended to replicate the Sixth Amendment or its requirement that the vicinage be previously ascertained by law. The Wisconsin and Minnesota Constitutions include that requirement (Wis. Const., art. I, § 7; Minn. Const., art. I, § 6), and the more recent Hawaii Constitution has the

requirement (Hawaii Const., art. I, § 14), but other states do not. The "previously ascertained by law" requirement does not appear to have been an aspect of the common law right to jury trial that the drafters of the California Constitution intended to secure to the residents of this state.

That being so, there is no state constitutional impediment to application of section 784.7 to petitioner.

III

*Disposition*

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., and Chin, J., concurred.

**WERDEGAR, J., Concurring.**—I agree with my colleagues in the majority that Penal Code section 784.7 authorizes consolidation of the Santa Clara County charge against petitioner with the Riverside County charges against him. (Maj. opn., *ante*, at p. 1054.) I also agree that the vicinage clause of the Sixth Amendment to the United States Constitution is not applicable to the states through the Fourteenth Amendment (*id.* at p. 1066) and that, "under the relevant California precedent, the right to a trial by a jury of the vicinage, as guaranteed by the California Constitution, is not violated by trial in a county having a reasonable relationship to the offense or to other crimes committed by the defendant against the same victim" (*id.* at p. 1075).

I do not necessarily agree, however, with certain aspects of the majority's lengthy discussion that are unnecessary to the resolution of this matter. The majority opinion expounds at length, for example, on the Sixth Amendment's "definition of the vicinage or district" (maj. opn., *ante*, at p. 1061; see also *id.* at pp. 1061-1063), only to conclude that, whatever the vicinage clause means, it simply "is not applicable to the states" (*id.* at p. 1065). The majority opinion also engages in unnecessary discourse on the merits and current utility of a vicinage requirement, gratuitously implying that vicinage concerns have become obsolete.[1] As the Legislature in Penal Code section 784.7 "does not dispense with vicinage requirements" (conc. opn. of Chin,

---

[1]See, e.g., majority opinion, *ante*, at page 1065 (opining that "trial in the locality in which a crime was committed," although once important, is no longer so and stating the "geographic location from which the jury is selected has no bearing on how the jury selection is

J., *post*, at p. 1080), in that trial of charges thereunder must be held in—and, thus, jurors will be drawn from—a county where at least one of the charged crimes occurred, it seems to me we should exercise caution to avoid unnecessarily disparaging such requirements.

For the foregoing reasons, I concur in the judgment.

**CHIN, J.**—I concur with the holding that Penal Code section 784.7 (section 784.7) comports with state and federal constitutional requirements. I agree that the Sixth Amendment's vicinage provision does not apply to the states through the Fourteenth Amendment, and that the statute does not violate the state Constitution, specifically California Constitution, article I, section 16. I write to explain further why I believe section 784.7 is valid under the state Constitution.

Although the California Constitution contains no specific reference to a right of vicinage, case law has interpreted article I, section 16, which gives defendants the right to a jury trial, as including by implication the right to trial by a jury selected from the vicinage or county. (E.g., *People v. Hill* (1992) 3 Cal.4th 959, 984 [13 Cal.Rptr.2d 475, 839 P.2d 984].) "This section guarantees the right of jury trial as it existed at common law when the Constitution was adopted in 1849." (*Dorsey v. Barba* (1952) 38 Cal.2d 350, 355 [240 P.2d 604].) But this guarantee does not mean that all features of the jury trial right must remain exactly as they were in 1849. The right remains flexible enough to adapt to changed circumstances. "The constitutional guarantee does not require adherence to the letter of common law practice, and new procedures better suited to the efficient administration of justice may be substituted if there is no impairment of the substantial features of a jury trial." (*Id.* at p. 356.)

Section 784.7 provides that when a defendant is charged with more than one of certain crimes, generally sexual assault, child abuse, and domestic violence, committed against the same victim in more than one county, all of the charges may be tried together in any one of those counties. Thus, in this case, the charges that defendant committed numerous crimes against his two young children may be tried together in Riverside County, rather than some in Riverside County and one, involving his daughter, in Santa Clara County. Section 784.7 does not dispense with vicinage requirements; trial must still be held in a county where at least one of the charged crimes occurred. Thus, the issue before us is narrow: whether all of the crimes involving the same victim and defendant may be tried together where at least one of those

influenced"); *ibid.* (suggesting "a vicinage guarantee does not serve the purpose of protecting a criminal defendant from government oppression").

crimes occurred, or whether there must be a separate trial in each county. The answer is clear; the right to a jury trial does not require the state to move the defendant, victim, and other witnesses from county to county for trial after trial, limited only by the number of counties in which the crimes occurred. These crimes may be tried together while preserving the substantial features of a jury trial.

Circumstances have changed in California dramatically since 1849 as they relate to the question where a trial may and should be held. Much has happened in the century and a half since our Constitution was adopted. Improvements in transportation and communication have made the joint trial of related crimes that cross county lines much easier than formerly. The railroad has been developed, the automobile and airplane have been invented and are widely used, and roads are vastly improved. The telephone has been invented and has come into common use; we are now in the age of the Internet. Our Constitution is flexible enough to adapt to these changes. It does not force us, at the dawn of the 21st century, to remain in the 19th century. The Legislature may enact reasonable reforms to take advantage of the fact that a joint trial is now more practical, while still preserving the substance of a jury trial.

The Legislature has responded to modern times by reducing the unavoidable burden of multiple trials on the judicial system, the public, the parties, and, above all, on victims like the six-year-old daughter here. Victims of crime, including children, and victims of domestic violence, must appear in court to confront the defendant and be subjected to cross-examination, even though that experience is often difficult and traumatic. (See, e.g., *Alvarado v. Superior Court* (2000) 23 Cal.4th 1121 [99 Cal.Rptr.2d 149, 5 P.3d 203].) But nothing in our Constitution forces these victims to do so repeatedly in county after county, trial after trial. Not only is joint trial of related crimes that cross county lines practical today, the Legislature may reasonably conclude it is also eminently desirable.

The legal climate has also changed as it relates to the right of vicinage. As the Court of Appeal below noted, "the original purpose of the vicinage requirement was to ensure that a case was heard by jurors who were *familiar* with the parties and the locality, and could apply their own personal knowledge in evaluating the testimony or other evidence. Nowadays, of course, the goal is to *avoid* a jury with such knowledge in favor of a set of 12 *tabulae rasae* in the jury box, applying only their common sense and intuition." (See *Hernandez v. Municipal Court* (1989) 49 Cal.3d 713, 719-720 [263 Cal.Rptr. 513, 781 P.2d 547].) The goal today is fully served by allowing a Riverside County jury to render a verdict on a series of crimes, some committed in that county and some committed elsewhere.

Joint trial in a single county is also fair to defendants. Although defendant here complains about being tried far from the locale of the crimes, the issue is not whether he may be tried in Riverside County, for he surely may, at least for the crimes in that county. The issue is solely whether he may be tried for all of these related crimes in Riverside County, or must be tried in Riverside County for the crimes in that county *and* then tried separately in Santa Clara County. The Legislature can reasonably—and constitutionally—conclude that one trial, rather than multiple trials, one after the other, fully protects a defendant's legitimate rights.

As the majority points out, a single crime involving multiple counties has long been triable in any county in which part of that crime occurred. For example, a murder charge may be tried in the county where the fatal injury was inflicted, or the victim died, or the body was found. (Pen. Code, § 790.) Obviously, if a homicide case is tried where the body was found but not where the victim was killed, the trial would not be in the vicinage of all the criminal events. It is but a small step, and a logical one, to go from allowing a single crime that crosses county lines to be tried in any of those counties to allowing a series of *related* crimes committed in multiple counties—such as those involving the same defendant and victim—also to be tried in one of those counties.

Accordingly, I conclude that section 784.7 is constitutional. Because this case involves only the validity of that single statute, I express no view on the outer limits of the Legislature's authority to permit crimes committed in separate counties to be tried together. Section 784.7 comes within those limits whatever they may be.

Brown, J., concurred.