[No. D023930. Fourth Dist., Div. One. Nov. 18, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
RODNEY HOLDEN NUNN, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of Discussion part B.

COUNSEL

Martin Nebrida Buchanan, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

BENKE, Acting P. J.—In this case we discuss the limitations imposed by Penal Code[2] section 29 on the scope of opinion testimony concerning a criminal defendant's state of mind at the time of a charged offense.

Appellant Rodney Holden Nunn was convicted of four counts of attempted murder and nine counts of assault with a deadly weapon. Thirteen section 12022.5, subdivision (a), firearm use allegations and two section 12022.7 infliction of great bodily injury allegations were found true. Nunn was sentenced to a prison term of 39 years, 8 months. He appeals, arguing the trial court erred in excluding defense psychological testimony and that the evidence was insufficient to support two of the attempted murder convictions.

[2]All further statutory references are to the Penal Code.

FACTS

### A. Prosecution Case

About 5:30 p.m. on September 25, 1994, Benito Asencio had finished working at a nearby farm and was sitting on an embankment next to Black Mountain Road waiting for a ride. Two other workers, Efigenio Uriostegui and Emilio Nava, were about three feet away. Eight or nine other men were waiting in the same general area. Appellant was standing behind a fence about 50 feet away holding a rifle and pointing it at the ground. Appellant yelled something the men did not understand, then pointed the gun in the direction of Asencio, Uriostegui and Nava and began to fire. The first shot hit Asencio in the hip, he tried to run but fell to the ground seriously wounded. Uriostegui and Nava ran and were not hit.

On the afternoon of September 25, 1994, as he was driving his truck on Black Mountain Road, Arnulfo Alvarez saw appellant firing a rifle at a group of Mexican men, heard five or six shots and saw Asencio being struck by one of the bullets. Alvarez stopped and used his mobile radio to report the shooting. He then heard more shots. As he drove on he made eye contact with appellant. Appellant pointed the gun at Alvarez. Alvarez lay down on the seat and then heard a shot. When Alvarez looked up he saw appellant pointing the gun, but not firing it, at a group of men who were running away.

At about the same time, Fidel Alvarez was driving his car, with three passengers, on Black Mountain Road and starting to turn into a ranch. Alvarez noticed appellant standing nearby holding a rifle. Appellant yelled at Alvarez not to enter. As Alvarez drove slowly past, he looked in his rear view mirror and saw appellant pointing his rifle at Alvarez's car. Appellant fired his gun but neither Alvarez nor his car was hit.

On September 25, 1994, Alejandro Nava was walking down a road and saw appellant holding a rifle. Before appellant fired, Nava heard him yell "fucking Mexicans" at the men standing on the road.

Juan Hernandez saw appellant firing at one group of men, then at Asencio, Nava and Uriostegui. Appellant then fired in the direction of Hernandez and his companions, Alejandro Nava and a man named Carlos.

Appellant was arrested later in the evening. Appellant had been drinking but was not intoxicated.

About two weeks before Ascencio was shot, appellant fired at Juan Hernandez from a distance of three hundred yards. The bullet came close enough to Hernandez that he could hear it pass.

B. *Defense Case*

Appellant testified that in 1983 he began working as a caretaker on the property where the shooting occurred and was living alone there in a trailer. In the spring of 1990 the adjoining property was leased for the growing of tomatoes. Thereafter appellant would see farm workers gather in the area. The workers drank alcoholic beverages, trash began to accumulate on the property appellant oversaw and there was evidence of tampering with the fences.

On September 25, 1994, appellant spent the day drinking liquor. Around sundown, now drunk, he went out for his daily walk around the perimeter of the property. Appellant armed himself with a .22-caliber rifle, as he often did, in case he encountered a rattlesnake. As appellant checked the watering of a tree, he was startled when he saw about six men standing next to the fence. The men appeared to be Mexican, were lighter skinned than the farm workers and did not appear to have been working the fields. Appellant told the men to get away from the fence. One of the men responded angrily in Spanish. Two other men stepped out from behind a bush on the other side of the fence but near appellant. Appellant, again startled, told them to leave.

Appellant fired a shot into the air to scare the men. The men by the bush ran but the six others did not. One of the remaining men made a hostile comment that led appellant to believe they were going to assault him. Appellant lowered the rifle, pointed it to the right of the men and fired. As the men ran, appellant continued to fire to scare them. Appellant was not intending to shoot anyone and was not aware anyone else was in the area. Appellant, unaware anyone had been hit, returned to his trailer. Appellant denied ever firing his rifle at Juan Hernandez.

Clinical psychologist Glenn Lipson evaluated appellant. He concluded appellant had been through several traumatic incidents while serving in Vietnam and stated that such experiences can cause a person to overreact in subsequent traumatic situations. Appellant had a substance abuse problem with alcohol and was emotionally "constricted." Lipson concluded appellant was very intelligent, had experienced emotional trauma and had problems with the use of alcohol. He found no signs of racial hatred in appellant's makeup.

DISCUSSION

A. *Psychological Evidence*

Appellant argues the trial court misinterpreted the limitations on opinion testimony embodied in sections 28, subdivision (a), and 29 and erred

in excluding the opinion of Dr. Lipson that based on appellant's inebriation and tendency to overreact to stress, he fired his rifle impulsively.

Section 28, subdivision (a), states: "Evidence of a mental disease, mental defect, or mental disorder shall not be admitted to show or negate the capacity to form any mental state, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act. Evidence of mental disease, mental defect, or mental disorder is admissible solely on the issue of whether or not the accused actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged."

Section 29 states: "In the guilt phase of a criminal action, any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include, but are not limited to, purpose, intent, knowledge, or malice aforethought, for the crimes charged. The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact."

1. *Background*

Before his testimony, a hearing was held concerning the permissible scope of the testimony to be offered by Dr. Lipson. The prosecutor noted that in his report, after reviewing appellant's history, Dr. Lipson stated: "[Appellant's] tendency to overreact, coupled with his level of inebriation, resulted in his impulsive firing of the weapon." The prosecutor argued such statement was inadmissible under sections 28 and 29. The trial court agreed.

The court instructed Dr. Lipson his opinion that appellant had fired impulsively was inadmissible since it was a conclusion concerning appellant's intent at the time of the shooting. The court stated, however, Lipson was free to testify to his other findings and conclusions.

Dr. Lipson testified extensively concerning appellant's background and mental condition. He stated appellant experienced several traumatic incidents related to his service with the Navy during the Vietnam War. Lipson stated such experiences can result in a person overreacting to subsequent stressful events.

The prosecutor objected, arguing Dr. Lipson was testifying to appellant's state of mind in violation of the court's ruling. The court disagreed, stating

it was proper for the defense to present evidence concerning appellant's mental condition and the effect such condition would have on his state of mind at the time of the shooting. What the expert could not do was give his opinion concerning whether the defendant did or did not act with a specific intent or mental state.

## 2. *Discussion*

■  Courts have uniformly concluded that sections 28 and 29 are "legitimate legislative determinations on the admissibility of certain classes of evidence and do not deprive a defendant of his or her right to present a defense." (*People* v. *Whitler* (1985) 171 Cal.App.3d 337, 340-341 [214 Cal.Rptr. 610]; *People* v. *Young* (1987) 189 Cal.App.3d 891, 904-905 [234 Cal.Rptr. 819]; *People* v. *McCowan* (1986) 182 Cal.App.3d 1, 11-15 [227 Cal.Rptr. 23] (*McCowan*); *People* v. *Jackson* (1984) 152 Cal.App.3d 961, 969-967 [199 Cal.Rptr. 848] (*Jackson*).)

Appellant seems to suggest that section 29 allows an expert to express any opinion, however specific and determinative of the mental issues involved, as long as he does so without using the name of the specific mental state involved, for example, malice aforethought. In support of this conclusion, appellant cites two cases, *McCowan*, *supra*, 182 Cal.App.3d at pages 11-15, and *Jackson*, *supra*, 152 Cal.App.3d at pages 969-970. In both cases the courts confronted claims that section 29 placed unconstitutional restrictions on the presentation of defense evidence. In rejecting the argument the courts noted that section 29 allowed the defense to present extensive expert psychological testimony and merely reserved for the jury the ultimate legal question of whether the defendant harbored the required mental state at the time of the charged offense.

In demonstrating that the defendants in those cases were allowed to present relevant evidence, the courts cited examples of the testimony presented. It is from these examples that appellant draws his conclusion that an expert may offer any opinion, however specific and determinative of the mental element in question, as long as the expert does not mention the technical name for the mental element in issue.

In *Jackson*, an attempted murder case, the court noted a defense psychiatrist testified the stabbing was due to the defendant's mental illness and was " 'nearly [an] involuntary act.' " (*Jackson*, *supra*, 152 Cal.App.3d at p. 969.)

In *McCowan*, a murder case, the court noted the defense was allowed to "present evidence suggesting that [the defendant's] mental condition prevented him from forming the required mental state at the time he committed

the offenses. [The psychiatrist] testified that [defendant's] mental disorder, a 'major depressive episode,' had a significant impact on his mental process the night of the shootings. According to [the psychiatrist], defendant essentially was out of control, unable to think clearly or make judgments without great difficulty. The cause of his condition was the existence of numerous, intense pressures and stresses." (*McCowan, supra,* 182 Cal.App.3d at p. 13; see also *People* v. *Young, supra,* 189 Cal.App.3d at pp. 906-907 [psychological testimony admitted similar to that in *Jackson* and *McCowan*].)

We conclude these cases are not authority defining the limits of permissible psychological testimony under section 29. ■ "A case is not authority for propositions neither considered nor discussed in the opinion." (*In re Muszalski* (1975) 52 Cal.App.3d 500, 504 [125 Cal.Rptr. 286]; *In re Anthony S.* (1992) 4 Cal.App.4th 1000, 1006 [6 Cal.Rptr.2d 214].) Both *McCowan* and *Jackson* were dealing with the fundamental question of whether the evidentiary restrictions imposed by section 29 denied due process. The answer was no since the section allows the defense to present extensive psychological testimony relevant to the mental state in issue. Neither case, however, discussed or considered the exact dividing line between permissible opinion testimony concerning mental state and impermissible testimony concerning whether the defendant did or did not have the required mental state at the time of the act.

While it is tempting in dealing with the legal "bog," that is sections 25,[3] 28, and 29, to define "brightline" and easily applied rules, to do so invites unfairness and disregard for the spirit of reform those sections sought. It would be simple to hold, as appellant suggests we do, that as long as a defense expert avoids the use of the legal name of the mental state in question, the testimony is admissible. Under such a rule it would be improper for a defense psychiatrist to testify that a defendant did not "premeditate and deliberate" but would be proper to testify he did not "plan" his actions. This, however, would be mere game playing.

■ We conclude section 29 does not simply forbid the use of certain words, it prohibits an expert from offering an opinion on the ultimate question of whether the defendant had or did not have a particular mental state at the time he acted. An expert may not evade the restrictions of section 29 by couching an opinion in words which are or would be taken as synonyms for the mental states involved. Nor may an expert evade section 29 by offering the opinion that the defendant at the time he acted had a state of mind which is the opposite of, and necessarily negates, the existence of the required mental state.

---

[3]Section 25 abolishes the defense of diminished capacity.

We find support for this conclusion in *People* v. *Czahara* (1988) 203 Cal.App.3d 1468 [250 Cal.Rptr. 836] (*Czahara*), where the court stated: "Penal Code section 29 prohibits expert psychiatric testimony as to whether the defendant did or did not have a required mental state, including malice aforethought. [The defendant] concedes [his expert] could not state an opinion that [the defendant] did not have the mental state required for attempted murder. But taken together, the two opinions offered from [the expert]—that [the defendant] acted in the heat of passion and that his emotional reaction was objectively reasonable under the circumstances— completely negate malice aforethought and suffice to reduce intentional murder to voluntary manslaughter." (*Id.* at p.1477, fn. omitted.)

The court explained to state a killing was in the heat of passion with sufficient provocation is to essentially state that the killing was done without malice aforethought. Expert testimony to that effect, therefore, in a case where murder is charged would properly be excluded under section 29. (*Ibid.*; see also *People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1246-1247 [275 Cal.Rptr. 729, 800 P.2d 1159]; *People* v. *Aris* (1989) 215 Cal.App.3d 1178, 1197-1198 [264 Cal.Rptr. 167].)

We conclude based on the language of sections 28 and 29, and the discussion in *Czahara*, that the sections allow the presentation of detailed expert testimony relevant to whether a defendant harbored a required mental state or intent at the time he acted. Thus, in the present case it was permissible for Dr. Lipson to opine that appellant, because of his history of psychological trauma, tended to overreact to stress and apprehension. It was permissible for him to testify such condition could result in appellant acting impulsively under certain particular circumstances. Dr. Lipson could have evaluated the psychological setting of appellant's claimed encounter with the men at the fence and could have offered an opinion concerning whether that encounter was the type that could result in an impulsive reaction from one with appellant's mental condition. What the doctor could not do, and what the defense proposed he do here, was to conclude that appellant had acted impulsively, that is, without the intent to kill, that is, without express malice aforethought. The court acted properly in excluding Dr. Lipson's opinion that appellant fired his weapon impulsively.[4]

---

[4]There is some suggestion in appellant's argument that the court erred not merely in excluding Dr. Lipson's specific opinion that appellant fired impulsively but also in more generally restricting his testimony concerning appellant's state of mind the day of the shooting.

While the prosecution's objection and the court's ruling focused on the expert's specific conclusion, the court made several statements more generally describing the permissible scope of the expert's testimony. The court instructed Dr. Lipson he could not testify to

B. *Sufficiency of Evidence**

. . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Nares, J., and Haller, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 12, 1997. Werdegar, J., was of the opinion that the petition should be granted.

---

appellant's level of inebriation at the time of the crime since Lipson was not an expert on that issue. The court told Lipson he could testify concerning the remaining material in his report concerning appellant. The court told Lipson it was important he not give an opinion concerning what was in appellant's mind at the time of the shooting since that was not allowed by the law but he was free to discuss appellant's psychological background. Dr. Lipson replied he understood and would not discuss the ultimate issue of intent. Defense counsel took no exception to the court's remarks.

During that portion of the doctor's testimony when he was explaining that prior psychological trauma caused persons to overreact to subsequent traumatic incidents, the prosecutor objected, stating the expert was offering an improper opinion concerning appellant's intent at the time of the crime. The trial court disagreed, stating the expert could testify concerning appellant's general mental condition, including his heightened sensitivity to stress. What the expert could not do was testify to what appellant "did" at the time he fired his rifle. The court stated the law allowed the expert to testify concerning appellant's mental condition but not to the ultimate issue of his intent at the time of the crime.

It is difficult to clearly discuss mental states and psychological defense during the give and take of trial. In this case we believe the trial court's rulings and explanations were both correct and well stated. If there is any ambiguity at all in the court's position concerning the permissible scope of Dr. Lipson's testimony, it results from the fact the only specific offer of proof made by the defense was that it wished its expert to state appellant fired his rifle impulsively. The court admitted all other opinions offered by the expert and was not called upon in the context of additional objections or offers of proof to further refine his ruling concerning the permissible scope of Dr. Lipson's opinions. There is no demonstration here that the trial court improperly restricted Dr. Lipson's testimony.

*See footnote 1, *ante*, page 1357.