Filed 3/22/16  P. v. Walquist CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALEXANDER SCOTT WALQUIST,<br><br>    Defendant and Appellant. | G050686<br><br>(Super. Ct. No. 13CF1378)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge.  Affirmed.

        James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

A jury convicted defendant Alexander Scott Walquist of criminal threats (Pen. Code, § 422, subd. (a)) and stalking (Pen. Code, § 646.9, subd. (a)).[1] The trial court sentenced defendant to four years in prison, consisting of three years for criminal threats, eight months for stalking, and four months for attempted grand theft (a crime which defendant pleaded guilty to in a separate case).

During the trial, the court placed limits on defense expert witness testimony. Defendant contends his expert should have been allowed to opine whether defendant had the intent or ability to form the requisite intent for the crimes alleged. But the court properly limited the expert's testimony under section 29.

Defendant also challenges the court's imposition of lifetime sex offender registration. The court, however, acted within its discretion under section 290.006 by finding defendant's stalking conviction was motivated by sexual compulsion or gratification. We affirm the judgment.

FACTS

*Background*

Defendant attended grade school and high school with the victim,[2] but they never formed a personal friendship or romantic relationship. Defendant initially established contact with the victim in July 2012, when he began sending messages to her online blog account. From July 2012 through April 2013, defendant continuously attempted to contact the victim through hundreds of online messages, phone calls, voicemails, text messages, and photographs. This contact was uninvited and unwanted

---

[1] All statutory references are to the Penal Code.

[2] We will refrain from using the name of the individual targeted by defendant.

2

by the victim. Over the 10-month period, the victim only responded to defendant to tell him to stop contacting her and to warn him that she would go to the police if he did not.

Defendant's messages were consistently harassing, lewd, sexual, and physically threatening. For example, defendant once sent the victim 148 text messages in a row, the majority of which were the same photograph of his genitalia. Defendant would also call the victim repeatedly and leave graphic and threatening voicemails. For instance, in one voicemail defendant said, "See I'm looking forward to tearing up that little pussy of yours." In another voicemail, defendant said, "I admit that perhaps raping you at N64 was a ah maybe wasn't the best choice of words, fuck it that's what I said though; I'm not going to take back what I said. I'm gonna rape you at N64 that's what I'm going to do . . . . I'm going to rape you at N64. I will rape you at N64 because I'm the man."

In some instances, defendant's messages indicated that he planned to encounter the victim in person at a specific time and location. For example, defendant once told the victim he would come to her home at 7:00 p.m., that evening, which frightened the victim and caused her to warn her family. On a few occasions, defendant sent messages indicating that he was around the corner from the victim's place of work and planned to come meet her when she got off work at 9:00 p.m. Things escalated in early 2013 when defendant began contacting the victim more frequently and saying he planned to have forced sexual intercourse with her on May 1. Although defendant began referring to May 1 as early as January 2013, his threats became more frequent during April 2013.

On April 25, 2013, in anticipation of the threatened May 1 deadline, the victim went to the police. Police investigators subsequently collected a cell phone and a computer from defendant's home. On those devices, the investigators found evidence of the messages and photographs the victim claimed she had received from defendant.

*Medical History and Expert Testimony*

Francisco Gomez, a forensic clinical and neuropsychologist with a doctorate in clinical psychology, testified as defendant's expert witness. Gomez based his psychological assessment of defendant on his interviews with defendant and on third-party information such as the police report, a psychiatric hospital report, and an interview with defendant's mother. While interviewing defendant, Gomez gave him a series of tests that included a personality inventory, an IQ test, neuropsychological tests, and tests for malingering.

The test results demonstrated defendant's poor judgment despite his relatively high IQ, as well as problems with attention, concentration, and impulse control. According to Gomez, these deficits suggest an impairment of the frontal lobe of the brain that restrains one's ability to adjust actions based on prior experiences. Gomez further explained that a person with this impairment will say what he or she is thinking without considering the effect and consequences, which Gomez called a lack of insight. Gomez also testified that he diagnosed defendant with two illnesses — bipolar disorder and substance abuse disorder — and explained in detail why he reached these diagnoses.

During direct examination, defense counsel explicitly prompted Gomez to opine whether defendant had the requisite intent, or ability to form the requisite intent, for the crimes charged. However, each time defense counsel posed a question to Gomez about defendant's specific mental state while engaged in criminal activity, the court sustained the prosecution's objections.

## DISCUSSION

The primary issue on appeal is whether the court's limitation on Gomez's testimony was proper. Defendant also challenges the imposition of lifetime sex offender

4

registration, which the court ordered pursuant to findings that defendant stalked victim as a result of sexual compulsion or for the purposes of sexual gratification.

*Limitation on Expert Testimony*

The court's limitation on Gomez's testimony, which precluded him from opining whether defendant had the requisite intent, or ability to form the requisite intent, for the crimes charged, was proper under section 29. Under section 29, "any expert testifying about a defendant's mental illness, mental disorder, or mental defect shall not testify as to whether the defendant had or did not have the required mental states, which include . . . intent . . . for the crimes charged. The question as to whether the defendant had or did not have the required mental states shall be decided by the trier of fact."

Section 29 "permit[s] introduction of evidence of mental illness when relevant to whether a defendant actually formed a mental state that is an element of a charged offense, but do[es] not permit an expert to offer an opinion on whether a defendant had the mental capacity to form a specific mental state or whether the defendant actually harbored such a mental state." (*People v. Coddington* (2000) 23 Cal.4th 529, 582, overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13; *see People v. Smithey* (1999) 20 Cal.4th 936, 960-961 ["an expert may not offer an opinion regarding whether the defendant had the capacity to form the intent required for the crime, or whether the defendant actually did form the requisite intent"].)

Defense counsel explicitly asked Gomez to comment on defendant's mental state in violation of section 29. Defense counsel first asked, "And in your opinion how did [defendant's] mental illness affect his intent in creating, sending those messages and in behaving in that way?" The court sustained the prosecution's objection. Defense counsel then asked, "In your opinion, did [defendant's] mental illness affect his mental state during the period of July 2012 to April 2013?" The prosecution's objection was

5

again sustained. Defense counsel went on to ask generally, "Is it possible for a bipolar person to form intent?" and "Is it also possible for a bipolar disorder to inhibit someone's ability to form intent?" Gomez was permitted to answer both of these questions without interruption. However, when defense counsel asked Gomez a third time if he had "an opinion about whether [defendant's] bipolar disorder affected his intent during the period of July 2012 to July 2013," the court again sustained the prosecution's objection. After the court had prohibited Gomez from answering essentially the same question three times, it explained that counsel was allowed to ask Gomez hypothetical questions, but could not ask Gomez to state his opinion about the defendant's specific mental state.

Defendant relies on *People v. Cortes* (2011) 192 Cal.App.4th 873 (*Cortes*) in asserting that the court's limitation on Gomez's testimony was improper. In *Cortes*, the court reversed a conviction of first degree murder on the grounds that the trial court improperly restricted expert testimony by the defendant's psychiatric expert witness. (*Id.* at p. 877.) During trial, the defendant's expert was allowed to describe generally the mental conditions of dissociation and posttraumatic stress disorder, but prohibited from testifying about the defendant's mental condition at all. (*Id.* at 891.)

*Cortes* does not parallel the case at hand. The expert in *Cortes* was only allowed to generally describe symptoms of a "dissociative state" and prohibited from opining that the defendant himself was in a dissociative state. (*Cortes*, *supra*, 192 Cal.App.4th at p. 899.) The expert was not allowed to point to examples of the defendant's behavior that would support an inference that he was in a dissociative state. (*Ibid.*) Further, in *Cortes,* the court even refused to tell the jury whether the expert witness had personally interviewed the defendant, citing section 29 for its rationale. (*Cortes*, at p. 901.)

Here, to the contrary, Gomez testified that defendant had bipolar disorder and substance abuse disorder, and discussed specific examples of defendant's behavior that illustrated why he reached those diagnoses. Gomez was allowed to testify that "a lot

6

of times [defendant will] think things and just say them and not think about what the effect could be . . . . He doesn't think about how or what he says can and does and will affect the other person." Gomez was allowed not only to reveal he had interviewed defendant twice, but also to explain the nature of the interviews, the results of the interviews, and his analysis of the results. Gomez was allowed to describe the methods he used to assess defendant's psychological and cognitive functioning, describe the nature and results of his interviews and psychological testing of defendant, provide a lengthy explanation of the relationship between the neurological impairment he claimed to see in defendant and bipolar disorder and attention deficit disorder, present information he gathered from defendant's mother about defendant's medical history, and explain why he believed defendant had bipolar disorder and substance abuse disorder.

The single thing Gomez could not comment on was whether defendant had the requisite intent, or ability to form the requisite intent, for the crimes charged. Thus, under section 29, the court's limitation on Gomez's testimony was proper.

We further reject defendant's proposition that the court's limitation on his expert testimony deprived him of due process under the Fourteenth Amendment and the right to obtain witnesses in his favor under the Sixth Amendment. Evidentiary restrictions imposed by section 29 do not deny a defendant of his or her constitutional rights, because although an expert may not opine that a defendant had or did not have a culpable mental state, the expert may still present "extensive psychological testimony relevant to the mental state . . . ." (*People v. Nunn* (1996) 50 Cal.App.4th 1357, 1364; see also *People v. Jackson* (1984) 152 Cal.App.3d 961, 967–969 [restriction imposed by section 29 did not deprive the defendant of his right to due process].) Although defendant does not challenge the constitutionality of section 29 on its face, he contends the court interpreted the statute in a way that unconstitutionally excluded "critical defense evidence." As discussed, the trial court allowed Gomez to thoroughly describe defendant's mental condition and the effects it had on his behavior. Gomez was

7

only prohibited from stating whether defendant had or did not have the requisite mental state for criminal threats and stalking. Thus, the court's interpretation of section 29 was in accordance with the statutory language and precedent, and it did not infringe defendant's constitutional rights. (*See People v. Riccardi* (2012) 54 Cal.4th 758, 809 ["routine and proper application of state evidentiary law does not impinge on a defendant's due process rights"].)

In sum, the court correctly limited the testimony of defendant's expert witness pursuant to section 29.

*Sex Offender Registration*

Although stalking is not a sex offense per se under the Sex Offender Registration Act (§ 290 et seq.), the court imposed a registration requirement upon defendant under section 290.006. This statute provides, "Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration." (§ 290.006.)

When considering a sex offender registration sentence for crimes not specifically enumerated in section 290, subdivision (c), "'the trial court must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender.' [Citations.] Most importantly, the trial court must consider the likelihood defendant will reoffend." (*People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431, disapproved on other grounds in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888.) "By requiring a separate statement of reasons for requiring registration even if the

8

trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*People v. Hofsheier* (2006) 37 Cal. 4th 1185, 1197, overruled on other grounds in *Johnson v. Department of Justice*, *supra*, 60 Cal.4th at p. 888.)

Here, the jury found in a special verdict form that defendant's stalking was motivated by sexual compulsion or gratification. Following *People v. Mosley* (2015) 60 Cal.4th 1044, a defendant is not entitled to have the jury, rather than the court, decide if he or she will be sentenced with lifetime sex offender registration. However, this trial occurred before *Mosley* was decided by our Supreme Court, which likely explains why the jury made this finding about defendant's sexual motivation.

Having observed the trial and reviewed the probation report, the court agreed with the jury's finding at the sentencing hearing. In discussing defendant's sentence, the court pointed to a representative message in which defendant asked the victim to send him a picture of her breasts, opining, "[t]he only reason anybody is going to ask to see that is for sexual gratification, there is no other reason to do that." The judge further stated that the message was just one of "hundreds, if not thousands of comments like this" and confirmed with the prosecution that defendant had sent approximately 50 different photographs of his genitalia to the victim and hundreds, if not a thousand, messages. The court then stated, "[The court] makes a finding on the record that the registration is required because the crimes in this case were sexual in nature. The majority of the communication that was from the defendant to the victim revolved around how he wanted to have sex with her, and the many ways which he would make that happen, along with numerous photos of his penis, all of those which were unwanted and unsolicited." As set forth in the probation report the court indicated it had reviewed, defendant scored a five out of 10 on the state authorized risk assessment tool for sex

9

offenders, which placed him in the "Moderate-High Risk" category for recidivism. But the court did not explicitly cite defendant's likelihood of reoffending on the record.

The trial court's imposition of lifetime sex offender registry was proper. Defendant contends the court (unlike the jury's special verdict form) did not recite the precise words of section 290.006 ("as a result of sexual compulsion or for purposes of sexual gratification"). But the court did note during its statement on the record that "[t]he only reason anybody is going to ask to see that is for sexual gratification, there is no other reason to do that." The court also stated on the record the reasons for its imposition of registration — the overwhelming number of incidents and persistence of defendant in the face of consistent objections from the victim. The court did not abuse its discretion in subjecting defendant to a sex offender registration requirement.

DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

RYLAARSDAM, ACTING P. J.

ARONSON, J.

10