YEGAN, J., Dissenting:
I respectfully dissent.
Until today, it was settled that a mental health expert may not give testimony that *198 the defendant did or did not form the mental state required for the crime charged. (Pen.Code, § 29 ; People v. Pearson (2013) 56 Cal.4th 393, 443, 154 Cal.Rptr.3d 541, 297 P.3d 793 ; People v. DeHoyos (2013) 57 Cal.4th 79, 121, 158 Cal.Rptr.3d 797, 303 P.3d 1 ; People v. Halvorsen (2007) 42 Cal.4th 379, 408, 64 Cal.Rptr.3d 721, 165 P.3d 512 ; People v. Coddington (2000) 23 Cal.4th 529, 583, 97 Cal.Rptr.2d 528, 2" url="https://cite.case.law/citations/?q=2%20P.3d%201081">2 P.3d 1081, overruled on other grounds in Price v. Superior Court (2001) 25 Cal.4th 1046, 1069, fn. 13, 108 Cal.Rptr.2d 409, 25 P.3d 618.)[1] Here, defense counsel asked his expert, Dr. Nancy Kaser-Boyd, whether appellant was "psychiatrically impaired" and suffered from P.T.S.D. and a peri-traumatic dissociative state the day of the killing. The trial court sustained objections based on section 29 and People v. Pearson, supra, 56 Cal.4th 393, 154 Cal.Rptr.3d 541, 297 P.3d 793. Before the questions were asked, the court ruled that Dr. Kaser-Boyd "cannot testify as to what [appellant's] mental state was at the time of the evening in question. She can testify as to various aspects of P.T.S.D., as to testing and things of that nature, but not anything related to mental state at the time of the commission of the offense." *481 The majority opinion says that the ruling "robbed" Dr. Kaser-Boyd's testimony of any relevance it might have had with respect to appellant's mental state at the time of the murder. (Op. at p. 12.) Based on the majority opinion's construction of the law, defense counsel can evade section 29 by asking a mental health expert whether the defendant, on the day he committed the criminal act, had a state of mind which is the opposite of and negates the existence of the mental state required for the charged crime. That is the very thing section 29 prohibits. (See e.g., People v. Bordelon (2008) 162 Cal.App.4th 1311, 1327, 77 Cal.Rptr.3d 14 [section 29 prohibits hypothetical questions that might be interpreted to call for ultimate opinion about mental state]; People v. Larsen (2012) 205 Cal.App.4th 810, 827, 140 Cal.Rptr.3d 762 [section 29 focuses on whether defendant actually formed a mental state that is an element of the charged offense]; People v. Nunn (1996) 50 Cal.App.4th 1357, 1365, 58 Cal.Rptr.2d 294 [expert precluded from testifying that defendant fired weapon impulsively].)
Defense counsel initially wanted to ask the doctor whether appellant was psychiatrically impaired "at the time of the killing." After the trial court ruled that section 29 prohibits such a question, counsel changed the time frame and asked whether appellant was psychiatrically impaired "the day of the killing." Borrowing on People v. Cortes (2011) 192 Cal.App.4th 873, 121 Cal.Rptr.3d 605 (Cortes ), the majority opinion holds that such a question is permitted because it is indirect evidence of mental state from which the jury could "infer" that appellant did not intend to kill or premeditate. (Op. at p. 195.) That type of question is prohibited by section 29. Cortes holds that section 29 does not bar expert testimony about a defendant's diagnosis and mental condition, "or how that diagnosis or condition affected him at the time of the offense, as long as the expert does not cross the line and state an opinion that the defendant did or did not have the intent, or malice aforethought, or any other legal mental state required for conviction of the specific intent crime with which he is charged." (Id., at p. 908, 121 Cal.Rptr.3d 605, italics added.) In my view, Cortes was wrongly decided and should not be followed.
*199 "Day of the Killing" Question
The majority opinion seizes on the phrase "how that diagnosis or condition affected him at the time of the offense " to mean that Dr. Kaser-Boyd could opine on whether appellant was so psychiatrically impaired that appellant was unable to form the intent to kill. This violates section 29. Expert testimony that appellant was psychiatrically impaired "at the time of the killing" could reasonably be construed by the jury to mean that appellant did not harbor malice, premeditate, or intend to kill. (See e.g., People v. Halvorsen (2007) 42 Cal.4th 379, 408, 64 Cal.Rptr.3d 721, 165 P.3d 512 [prosecution asked defense mental health expert whether the evidence supported a psychiatric defense; jury could have understood the *482 testimony to be the functional equivalent of testimony that defendant had intent to kill].) Changing the time frame of the question to the "day of the killing" does not make the expert testimony any more admissible or take it outside section 29. "It would be simple to hold, as appellant suggests we do, that as long as a defense expert avoids the use of the legal name of the mental state in question, the testimony is admissible. Under such a rule it would be improper for a defense psychiatrist to testify that a defendant did not 'premeditate and deliberate' but would be proper to testify he did not 'plan' his actions. This, however, would be mere game playing." (People v. Nunn, supra, 50 Cal.App.4th at p. 1364, 58 Cal.Rptr.2d 294.)
So too here. Rephrasing the question to ask whether appellant was psychiatrically impaired the day of the killing violates section 29 and solicits testimony tantamount to an opinion that appellant did not harbor malice or the intent to kill. "[S]ection 29 does not simply forbid the use of certain words, it prohibits an expert from offering an opinion on the ultimate question of whether the defendant had or did not have a particular mental state at the time he acted. An expert may not evade the restrictions of section 29 by couching an opinion in words which are or would be taken as synonyms for the mental states involved. Nor may an expert evade section 29 by offering the opinion that the defendant at the time he acted had a state of mind which is the opposite of, and necessarily negates, the existence of the required mental state." (Ibid .)
Harmless Error
The majority opinion says that the evidence supports the first degree murder conviction but holds that appellant was denied the right to present his only defense: expert testimony explaining how appellant's past history of P.T.S.D. "was likely to affect his mental state " at the time of the killing. (Op. at p. 13.) But that misstates the question that was asked. Dr. Kaser-Boyd was asked whether appellant "was psychiatrically impaired on May 19, 2012" and whether "he suffered from P.T.S.D. on that day." The trial court did not abuse its discretion in sustaining the objection. (People v. San Nicolas (2004) 34 Cal.4th 614, 663, 21 Cal.Rptr.3d 612, 101 P.3d 509 [section 29 rulings reviewed for abuse of discretion]; People v. Nunn, supra, 50 Cal.App.4th at p. 1363, 58 Cal.Rptr.2d 294 [section 29 does not deprive defendant of right to present a defense].)
The alleged error, if any, in limiting Dr. Kaser-Boyd's testimony was harmless. (People v. Halvorsen, supra, 42 Cal.4th at p. 408-409, 64 Cal.Rptr.3d 721, 165 P.3d 512.) Dr. Kaser-Boyd testified that appellant suffered from peri-traumatic dissociation manifested by a sense of unreality, detachment, and derealization when appellant was sexually assaulted in 2004 and before and after the killing in 2012. At trial, *483 appellant admitted killing the victim *200 but said he was afraid of the victim and overcome with P.T.S.D. symptoms of paranoia, harm, and disassociation when the victim grabbed his buttocks. Despite this fear and "disassociation," appellant agreed to give the victim a ride and stopped at a CVS where appellant bought a knife and scissors to open the boxed knife. Laughing and smiling, appellant returned to the car and, seconds later, stabbed the victim and chased him almost 300 feet, stabbing him several more times. His theory of defense was put to the jury.
The majority opinion speculates that, but for the order limiting Dr. Kaser-Boyd's expert testimony, the jury could have inferred that appellant did not harbor malice or intend to kill when he stabbed the victim 21 times. The jury saw it differently and was instructed that an expert opinion is only as good as the facts and reasons on which it is based. (CALJIC 2.80.) Had the "day of the killing" question been asked, it is not reasonably likely that appellant would have received a more favorable verdict. I would affirm the judgment.

All statutory references are to the Penal Code unless otherwise stated.