Filed 12/17/21; Certified for publication 1/10/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B308319 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA020287) |
| v. | |
| ANTHONY DAVID GARRISON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Roger T. Ito, Judge. Affirmed.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1994, Anthony David Garrison pleaded guilty to murder and admitted that he personally used a firearm. It is undisputed that the murder occurred in the course of a robbery. On appeal, Garrison challenges the trial court's denial of his Penal Code section 1170.95 resentencing petition.[1] We affirm the trial court's order denying Garrison's resentencing petition.

We conclude the trial court properly denied Garrison's resentencing petition because the evidence at the section 1170.95, subdivision (d)(3) hearing, including Garrison's plea to personally using a firearm, supported only the conclusion that Garrison was the actual killer. Although Garrison and the People argue the trial court applied the incorrect standard of proof at the latter hearing, Garrison fails to demonstrate that the error was prejudicial, and we reject his argument that any such error was structural. Finally, we conclude, notwithstanding Garrison's argument to the contrary, substantial evidence supported the trial court's conclusion that Garrison was the actual killer. Because we conclude the trial court did not err in denying Garrison's petition, that denial did not violate his right to due process.

## BACKGROUND

In his appellate briefing, Garrison describes the facts as follows: "On December 11, 1993, Otto Hill and his wife Verna Hill were sleeping when they heard someone pounding on their front door. When Otto opened the door, appellant and his companion, both wearing ski masks, pushed their way inside the house, brandishing a BB gun. They were struggling with Otto

---

[1] Undesignated statutory citations are to the Penal Code.

when Otto told his wife to 'get the gun.' Verna grabbed a .38 caliber revolver from the drawer of the bedside table and went into the hallway. One of the two men then went into the bedroom and took the gun from Verna. The man pushed Verna and she fell to the ground. The man then left the room.

"Immediately after the man left the room, Verna heard shots fired. When Verna left the bedroom, she found her husband lying on the floor and wounded in the chest. Her husband was subsequently pronounced dead." (Citations & fn. omitted.)

The trial court found at the section 1170.95, subdivision (d)(3) hearing that Garrison and another man entered the Hills' residence on December 11, 1993. On appeal, Garrison argues substantial evidence shows that "Patrick Rowe, appellant's brother, was the actual killer, and not appellant." In contrast, the Attorney General argues the record of conviction demonstrates that Garrison was the actual killer.[2]

### 1.    *Information*

In April 1994, the People charged Garrison in count 1 with the murder of Otto Hill. The prosecution alleged robbery murder

---

[2] There is some confusion in the record as to references to a "co-defendant." The Attorney General points out that at the original sentencing hearing, the prosecutor referred to a codefendant as "Mr. Rardin" without further identifying Mr. Rardin. The prosecutor stated at the original sentencing hearing: "Mr. Rardin—testified that Mr. Garrison was the gunman." No party offered Rardin's testimony at the section 1170.95, subdivision (d)(3) hearing, and it is not in evidence before this court. Our record does not otherwise identify Garrison's codefendant.

and burglary murder special circumstances (§ 190.2, subd. (a)(17)), the personal use of a handgun (§§ 12022.5 & 1203.06, subd. (a)(1)), and the personal use of a deadly weapon (a BB gun) (§ 12022, subd. (b)). Garrison also was charged with two counts of first degree residential robbery and residential burglary. The People alleged additional enhancements and prior offenses not relevant to the current appeal.

## 2.    *Preliminary hearing testimony*

At the March 25, 1994 preliminary hearing, Verna Hill, and Robert B. testified for the prosecution. The parties stipulated for purposes of the preliminary hearing that Otto died of a gunshot wound to the chest.

Verna testified that on December 11, 1993, she lived in an apartment complex in Whittier. At that time, Verna was the apartment complex manager and Otto maintained the apartment complex. Verna collected the rent on December 10, 1993 and gave it to the owner. At about 3 a.m. on December 11, 1993, Verna heard very loud knocking as if someone were trying to "knock the door down." Otto opened the door and said, "What are you doing here?" Verna heard scuffling, and Otto asked her for their gun.

As Verna started to enter the living room with the gun a masked man stopped her. The masked man demanded "the money" and Verna told him she had already given the money to the owner.

The masked man grabbed the gun and pushed Verna causing her to break her arm. Verna heard Otto fighting with someone in the living room at the same time the masked man grabbed the gun from her hands. About 30 seconds later, Verna

4

heard two shots fired in close succession. Verna testified the shots were "[r]ight together, just pow, pow."

Verna later saw a BB gun in her apartment that did not belong to her or Otto. Verna also noticed that money was missing from the apartment.

Verna knew Garrison. Verna also knew Rowe. Rowe would pay the rent for the apartment his mother occupied in the same complex Verna managed. Rowe and Verna frequently conversed when Rowe paid his mother's rent. Although Verna had never seen Garrison inside her apartment before, she did see him at around 7:30 on the night of the shooting when Garrison knocked on the door to borrow money from Otto, who then lent Garrison $10.

Verna told police officers that Rowe was the masked man who entered her bedroom. Verna thought it was Rowe based on his voice. Verna identified Rowe and Garrison as brothers. According to Verna, Rowe would have known where Verna's bedroom was; Garrison would not have known.

At the preliminary hearing, Verna testified that the man who took the gun from her was very thin. She further testified Rowe was "[n]ot too thin."

At the time of Otto's murder, Robert lived in the same apartment complex as the Hills. Just after 3:00 a.m. on December 11, 1993, two individuals approached Robert and asked him for a ride. The two individuals were Garrison and Mr. Rardin. Robert testified that he previously identified Mr. Rardin even though he did not know his name. Robert knew Garrison because Garrison's mother lived in the same apartment complex as Robert. Garrison asked Robert for a ride and Robert said "no" but later changed his mind when he saw Garrison's gun. Robert

5

observed Garrison counting money as Robert drove Garrison to the requested location. Garrison was "almost pumped up" and the other man appeared nervous to Robert.

### 3.    *Plea and sentence*

Garrison signed a form indicating he had waived his right to a jury trial and to confront witnesses against him. The form did not identify the factual basis for the plea. The trial court's minute order shows that Garrison pleaded guilty to murder and admitted the section 12022.5, subdivision (a) allegation. As noted above, the section 12022.5, subdivision (a) allegation was that Garrison personally used a handgun in the commission of the murder. The transcript of the plea hearing is not in the record and according to an affidavit from the clerk's officer, could not be produced at the time of the section 1170.95, subdivision (d)(3) hearing.

The court sentenced Garrison to 30 years to life. At the sentencing hearing, the trial court stated that Verna identified the person other than "the co-defendant" as the shooter and "by process of elimination it was you." The prosecutor corrected the court, indicating that the codefendant testified that Garrison was the gunman, but Verna did not.

### 4.    *Petition for resentencing*

On March 26, 2019, Garrison filed a section 1170.95 petition for resentencing. Garrison alleged that he could not now be convicted of first or second degree murder because of changes

to section 189 effective January 1, 2019. Garrison checked a box stating that he was not the actual killer.[3]

On August 26, 2019, the People filed an opposition to Garrison's resentencing petition. Among other things, the People argued that Garrison was a major participant who acted with reckless indifference to human life. The People attached as exhibits the preliminary hearing transcript, the minute order indicating Garrison pleaded guilty to murder and admitted the section 12022.5, subdivision (a) enhancement, and the transcript of Garrison's original sentencing hearing.

The resentencing trial court appointed counsel for Garrison. Counsel filed a brief arguing that Garrison established a prima facie case of eligibility for relief. According to Garrison's counsel, Garrison "need only raise an inference that he was not a major participant who acted with reckless indifference to human life" and he met that standard.

The resentencing trial court found a prima facie case that Garrison was eligible for resentencing relief. The resentencing trial court issued an order to show cause why relief should not be granted. The People filed a supplemental brief arguing that

---

[3] Garrison did not check the following boxes: "I did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree," and "I was not a major participant in the felony *or* I did not act with reckless indifference to human life during the course of the crime or felony." Arguably, Garrison did not state a prima facie case for resentencing. We need not decide that issue because we conclude the record of conviction supports only one conclusion—that Garrison was the actual killer and therefore ineligible for resentencing.

7

Garrison was ineligible for resentencing because he was the actual killer.

At a subsequent hearing, no party presented additional evidence. The prosecutor again argued defendant was the actual killer and not entitled to relief under section 1170.95. The resentencing trial court responded, "[T]hat's my reading of the transcript of the plea as well." Defense counsel countered that the evidence was weak and "if there was a trial held today under this law, it's hard to see how the district attorney can show beyond a reasonable doubt that Mr. Garrison could be convicted."

The resentencing trial court concluded, "[B]oth on the preliminary hearing transcript but ultimately through the plea taken by Mr. Garrison, was that [*sic*] Mr. Garrison was the actual shooter and the actual killer. The theory was in fact a felony murder rule. And the 1170.95 contemplates if the person is the actual killer they are not eligible for the relief as contemplated in that code section."

The resentencing court continued, "The court by inference and my own reading by inference is that there were two people involved, the defendant and his brother, and specifically that his brother was the one identified as not being the person by negative inference by the witness that had shouted for the gun." "I also find beyond a reasonable doubt that Mr. Garrison could have been convicted as the actual shooter and actual killer in this felony murder case." Garrison timely appealed.

## DISCUSSION

### A.    Background on Section 1170.95

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) amended section 188 to provide that "[e]xcept as stated

8

in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2.) The amendment effectively "eliminates natural and probable consequences liability for first and second degree murder." (*People v. Gentile* (2020) 10 Cal.5th 830, 849.) In addition, Senate Bill No. 1437 enacted section 189, subdivision (e), which restricted felony murder liability to cases in which the defendant was the actual killer, acted with the intent to kill, or was a major participant in the underlying felony and acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3; see *Gentile*, at pp. 842–843.)

A person convicted of murder under a felony murder or natural and probable consequence theory may petition to have the murder conviction vacated. (§ 1170.95, subd. (a).) The petitioner's prima facie case consists of the following three elements:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

"(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

9

When a petitioner files a "complying petition," the court must appoint counsel if requested, "the issue is briefed[,] and then the court makes one (not two) prima facie determination." (*People v. Lewis* (2021) 11 Cal.5th 952, 966.) "[T]he prima facie inquiry . . . is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' [Citation.]" (*Id.* at p. 971.) At the prima facie stage, the trial court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*Id.* at p. 972.)

"If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).) In that event, the court must hold a hearing within 60 days to determine whether to vacate the murder conviction. (*Id.*, subd. (d)(1).) At this third and final stage of the proceeding, the prosecution has the burden of proving "beyond a reasonable doubt[ ] that the petitioner is ineligible for resentencing." (*Id.*, subd. (d)(3).) Either party may present "new or additional" evidence. (*Ibid.*)

## B. Garrison Is Ineligible for Resentencing as a Matter of Law Because He Was the Actual Killer

Garrison pleaded guilty to murder and admitted that in the course of the murder he personally used a handgun. On appeal, Garrison argues that, hypothetically, a defendant may personally use a handgun by displaying the handgun in a menacing manner,

10

hitting someone with the weapon, or firing the weapon. Garrison's hypothetical scenario does not apply to this case.

The only "use" of a handgun in this case was to shoot and kill Otto Hill.[4] There was *no* evidence—either in the record of conviction or at the section 1170.95, subdivision (d) hearing—that either Garrison or his confederate displayed the handgun in a menacing manner or merely hit someone with it. The record supports only one conclusion, that Garrison's use of the weapon was to shoot and kill Otto Hill. By admitting that he personally used a weapon, Garrison necessarily admitted that he was the actual killer simply because there was no evidence either at the preliminary hearing or at the section 1170.95, subdivision (d)(3) hearing supporting any other scenario.

Our high court's jurisprudence supports this conclusion. In *People v. Jones* (2003) 30 Cal.4th 1084, the California Supreme Court held that although in theory, a finding that a defendant personally used a firearm does not in itself prove a defendant is the actual killer (*id.* at p. 1120), the facts of a particular case may support only that conclusion. The high court explained that personal use does not automatically show the defendant is the actual killer because a gun could be used in different ways. For example: "If two robbers display guns to intimidate robbery victims and one shoots and kills a victim, both robbers could be found to have personally used a gun in the robbery and the felony

---

[4] At the preliminary hearing Garrison's counsel acknowledged that the homicide occurred in the course of the robbery but questioned "the identity of this young man as a perpetrator of that crime." Garrison later admitted to having committed murder and personally using a handgun in the commission of the crime.

murder, even though only one is the actual killer." (*Ibid*.) However, when the record shows only one person displayed and used a gun and "[a]ll evidence points to defendant, not the second robber, as the one with the gun," the true finding on a personal use enhancement demonstrates that the defendant was the actual killer. (*Ibid*.)

*People v. Young* (2005) 34 Cal.4th 1149 followed *Jones*. In *Young*, the high court acknowledged that a finding of personal use standing alone does not demonstrate a defendant was the actual killer. (*Id*. at p. 1205.) Where, however, there was "no evidence that anyone else who may have been present at the . . . residence displayed in a menacing manner, or otherwise used, a gun," "all evidence points to defendant as the one who actually shot and killed [the victim]." (*Ibid*.)

Here, the evidence demonstrates that one robber only used a handgun. Garrison describes the events as follows: either Garrison or his brother "took the gun from Verna" and "pushed Verna" causing her to fall to the ground. The man then left the room and "[i]mmediately after the man left the room, Verna heard shots fired." According to Garrison's own version of the facts of the offense, the only "use" of the handgun in the course of the murder was to kill Otto. There was no evidence that anyone used the gun just for intimidation. Garrison's admission to use of a handgun in the course of the murder thus necessarily was an admission that he was the shooter.

At the section 1170.95, subdivision(d)(3) hearing Garrison presented no contrary evidence. In sum, as the actual killer, Garrison is ineligible for resentencing under section 1170.95.

12

## C. Garrison's Remaining Arguments Demonstrate No Error in the Order Denying His Resentencing Petition

Garrison argues that (1) the trial court applied the wrong standard of proof at the section 1170.95, subdivision (d)(3) hearing; (2) no substantial evidence shows that he was the actual killer; and (3) the trial court's denial of his resentencing petition violates his right to due process. We address these arguments and conclude than none demonstrates prejudicial error.

### 1. Even if the trial court applied the wrong standard at the section 1170.95, subdivision (d)(3) hearing, Garrison suffered no prejudice

Garrison argues the trial court applied the incorrect standard of proof at the section 1170.95, subdivision (d)(3) hearing.[5] Before the Supreme Court ordered this court on November 23, 2021 to vacate our opinion in *People v. Duke* (Nov. 23, 2021, S265309) and before the Legislature enacted an amendment to section 1170.95 abrogating *Duke*, effective January 1, 2022, there was a split of authority as to whether at the section 1170.95, subdivision (d) hearing, the trial court acts as an independent factfinder or applies the substantial evidence test described in *Duke*. The Supreme Court's vacation of *Duke* and the Legislature's recent amendment to section 1170.95 resolve that split now requiring the trial court, acting as an

---

[5] The section 1170.95, subdivision(d)(3) hearing occurred prior to any appellate guidance on the applicable standard of proof.

13

independent factfinder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder.[6] (§ 1170.95, subd. (d)(3); see also, e.g., *People v. Fortman* (2021) 64 Cal.App.5th 217, 226, review granted July 21, 2021, S269228 [at a section 1170.95, subdivision (d) hearing the "People are required to prove *to the trial court* beyond a reasonable doubt that the petitioner is guilty of murder" on a currently valid theory of murder].)

Assuming Garrison is correct that the trial court applied the wrong standard of proof at the section 1170.95, subdivision (d)(3) hearing, Garrison cannot demonstrate any prejudicial error. As set forth above, in light of the evidence before the trial court at the section 1170.95, subdivision (d)(3) hearing, Garrison's admission to personally using a handgun in the course of a murder was tantamount to admitting that he was the actual killer. Therefore, Garrison is ineligible for relief as a matter of law regardless of the standard of proof applied by the resentencing trial court.

Garrison argues the trial court committed structural error in applying the wrong standard of proof, making a prejudicial error analysis irrelevant. We disagree that any such error by the trial court was structural.

"Structural defects requiring automatic reversal of a criminal conviction typically involve basic protections without

---

[6] The parties agree that the trial court should have applied this standard to this case. The Attorney General argues "[a]ppellant correctly observes that, in denying the petition, the [resentencing] court applied an incorrect substantial-evidence standard of proof at the evidentiary hearing rather than acting as an independent factfinder."

14

which ' "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." ' [Citations.] These include total deprivation of the right to counsel, denial of the right of self-representation, trial before a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, and denial of the right to a public trial." (*In re James F.* (2008) 42 Cal.4th 901, 914.)

The concept of structural error does not apply here because a section 1170.95 hearing is not a criminal trial. Accordingly, there is no basis to conclude that " ' "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . ." ' [Citations.]" (*In re James F., supra,* 42 Cal.4th at p. 914; see also *People v. Lewis, supra,* 11 Cal.5th at p. 974 [holding that the failure to appoint counsel under section 1170.95 did not constitute structural error].)

Our high court's opinion in *People v. Mil* (2012) 53 Cal.4th 400 (*Mil*), a first degree murder case, is instructive in its holding that the failure to instruct the jury on elements of a special circumstances finding was not structural error and thus subject to review for harmless error. There the trial court erred when: "[T]he jury was *not* instructed that a nonkiller . . . must (1) have personally had the intent to kill or (2) have been a major participant in the commission of the burglary or robbery and have acted with reckless indifference to human life." (*Mil*, at p. 409.) *Mil* nonetheless held that the error was not structural.

In doing so, *Mil* observed that an error is structural only in a " 'very limited class of cases' " when it affects the framework in which the trial proceeds. (*Mil, supra,* 53 Cal.4th at p. 410.) It gave as examples of structural error "the complete denial of

counsel, a biased decision maker, racial discrimination in jury selection, denial of self-representation at trial, denial of a public trial, and a defective reasonable-doubt instruction." (*Ibid.*) In addressing whether more than one omitted element in instructing the jury was structural error, *Mil* stated, "The critical inquiry, in our view, is not the number of omitted elements but the nature of the issues removed from the jury's consideration. Where the effect of the omission can be 'quantitatively assessed' in the context of the entire record (and does not otherwise qualify as structural error), the failure to instruct on one or more elements is mere ' "trial error" ' and thus amenable to harmless error review." (*Id.* at pp. 413–414, italics omitted.)

Here, assuming the court applied the incorrect standard at the section 1170.95 subdivision (d)(3) hearing, the error did not affect the framework of a trial. The error can be quantitively assessed and defendant has not demonstrated that he suffered any harm by it.[7] Regardless of whether the error should be evaluated under *People v. Watson* (1956) 46 Cal.2d 818, 836 or *Chapman v. California* (1967) 386 U.S. 18, 24, Garrison demonstrates no prejudice. In short, Garrison cannot demonstrate prejudice because he was ineligible for resentencing as a matter of law.

---

[7] Garrison cites *People v. Frierson* (2017) 4 Cal.5th 225, 230, 240; *People v. Fortman, supra,* 64 Cal.App.5th 217, 226–227; and *People v. Rodriguez* (2020) 58 Cal.App.5th 227, 245, review granted March 10, 2021, S266652 for a contrary conclusion. None of those cases discusses structural error, and we decline to rely on a case for a proposition it does not discuss. (*People v. Nunn* (1996) 50 Cal.App.4th 1357, 1364 [" 'A case is not authority for propositions neither considered nor discussed in the opinion.' [Citations.]"].)

### 2. Substantial evidence supported the conclusion that Garrison was the actual killer

We review the trial court's determination at the section 1170.95, subdivision (d)(3) hearing for substantial evidence. (*People v. Lopez* (2020) 56 Cal.App.5th 936, 953–954, review granted Feb. 10, 2021, S265974.) Garrison challenges the sufficiency of the evidence to support the resentencing trial court's finding that he was the actual killer.

As explained above, the record shows that Garrison was the actual killer. This is the *only* conclusion consistent with Garrison's admission that he personally used a handgun in the commission of the murder. Although Garrison correctly points out that Verna Hill did not identify at the preliminary hearing the masked man who shot Otto, Garrison later admitted that he was the person who personally used the handgun and the evidence was uncontroverted that the only use of the handgun was to shoot Otto. Garrison offers no other interpretation of his admission that he personally used a firearm and offered no other theory at the section 1170.95, subdivision(d)(3) hearing.

Finally, Garrison correctly states that the record does not show the factual basis for his plea, but he fails to demonstrate that the absence of this factual basis requires reversal of the resentencing court's order denying Garrison's resentencing petition. We first note Garrison does not challenge the trial court's reliance on evidence from the preliminary hearing. Second, this case involves a section 1170.95, subdivision (d)(3) hearing, not a prima facie inquiry at which level of analysis some courts have limited reliance on a preliminary hearing transcript. (Compare *People v. Davenport* (2021) 71 Cal.App.5th 476, 482 [holding resentencing trial court cannot consider facts from

preliminary hearing transcript as part of its prima facie review if the petitioner did not stipulate to the transcript as a factual basis for his or her plea] with *People v. Perez* (2020) 54 Cal.App.5th 896, 906, review granted Dec. 9, 2020, S265254 [holding resentencing trial court may consider preliminary hearing transcript as part of its prima facie review].)  Although section 1170.95, subdivision (d)(3) as effective January 1, 2022 precludes admission at the section 1170.95, subdivision (d)(3) hearing of hearsay evidence testified to by an officer at the preliminary hearing, this case involves no such evidence.

In short, the evidence at the section 1170.95, subdivision (d)(3) hearing shows that Garrison was the actual killer.  The fact that the prosecution did not identify the factual basis for Garrison's plea does not undermine this conclusion.

### 3. Garrison demonstrates no deprivation of his right to due process

Finally, Garrison argues that the "clearly erroneous" denial of his petition violated his right to due process.  Because we conclude that the trial court did not err in denying Garrison's petition for resentencing, Garrison has failed to demonstrate any violation of due process.

18

## DISPOSITION

The order denying Anthony David Garrison's Penal Code section 1170.95 petition is affirmed.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

Filed 1/10/22

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY DAVID<br>GARRISON,<br><br>    Defendant and Appellant. | B308319<br><br>(Los Angeles County<br>Super. Ct. No. VA020287)<br><br>CERTIFICATION AND ORDER<br>FOR PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |


The opinion in the above-entitled matter filed December 17, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in the judgment.

CERTIFIED FOR PUBLICATION.


_____

ROTHSCHILD, P. J.          CHANEY, J.          BENDIX, J.